JACK RAINSBERGER, Appellant, v. THE STATE
OF NEVADA, Respondent.

No. 4650

February 16, 1965                          399 P.2d 129

*Samuel S. Lionel*, of Las Vegas, for Appellant.

*Harvey Dickerson*, Attorney General, Carson City; *Edward G. Marshall*, Clark County District Attorney, Las Vegas, for Respondent.

**OPINION**

By the Court, THOMPSON, J. :

On April 25, 1963, three district judges unanimously found Jack Rainsberger guilty of first degree murder, and sentenced him to death. NRS 200.030(3).[1] The

---

[1] NRS 200.030 (3) provides in part, "* * * If any person is convicted of murder on his confession in open court without a jury, or upon a plea of guilty without specification of a degree, the supreme court shall appoint two district judges from judicial districts other than the district in which the confession or plea is made, who shall, with the district judge before whom such confession or plea was made, or his successor in office, by examination of witnesses, determine the degree of the crime and give sentence accordingly. Such determination shall be by unanimous vote of the three district judges."

appeal is from that judgment and sentence. The crime was committed on November 3, 1958, and on January 9, 1959, Rainsberger, with the advice of court-appointed counsel, entered a plea of guilty to an open charge of murder. At that time the statute provided for a hearing before a single district judge to determine degree and pronounce sentence. The hearing was held, and that judge found Rainsberger guilty of first degree murder, and sentenced him to death. However, that judgment was vacated because of prejudicial error. Rainsberger v. State, 76 Nev. 158, 350 P.2d 995. On remand a new hearing was ordered before three district judges because, pending that appeal, the legislature had amended the law to require three district judges rather than one to dispose of such a case. See Stats. Nev. 1959, ch. 448, effective April 6, 1959. The ordered hearing before three judges did not immediately occur. Claiming the change in the law to be ex post facto and in violation of the federal constitution, art. 1, § 10, Rainsberger, by a petition for habeas corpus to the state district court, sought his liberty. The petition was denied, and the denial affirmed on appeal. The ex post facto question was not reached. Rainsberger v. Leypoldt, 77 Nev. 399, 365 P.2d 489. Similar relief was then sought in the federal court and denied because state remedies had not been exhausted. Rainsberger v. Lamb, 313 F.2d 195 (9th Cir.) ; cert. denied, 374 U.S. 847 (1963). The hearing before three district judges then took place. Again Rainsberger was found guilty of first degree murder and sentenced to death. On this appeal from that judgment and sentence we are required to resolve the ex post facto question and other claimed violations of the federal constitutional requirements concerning the right to counsel and due process. We turn to discuss these and other assigned errors. It is appropriate, however, first to place this case in context. A different complexion is cast upon claimed constitutional violations and other claims of error when, as here, a defendant charged with murder, has voluntarily and with the assistance of competent court-appointed counsel, entered a plea of guilty in open court. The procedure to ascertain the degree of the crime, and fix sentence, is within the constitutional

power of a legislature to provide. Hallinger v. Davis, 146 U.S. 314 (1892). The court hearing, following a plea of guilty, is not a trial, for the issue of the defendant's guilt is no longer present. State v. Ceja, 53 Nev. 272, 298 P. 658; Ramos v. State, 58 Nev. 446, 83 P.2d 147; State v. Blackwell, 65 Nev. 405, 198 P.2d 280; Rainsberger v. State, 76 Nev. 158, 350 P.2d 995; Archibald v. State, 77 Nev. 301, 362 P.2d 721; Annot., 34 A.L.R.2d 919. The constitutional safeguards pointing to a fair trial are greatly diluted in significance, for a trial to determine the ultimate issue of innocence or guilt has been waived by the plea of guilty. The presumption of innocence has ceased to exist, and the defendant stands before the court an admitted murderer, asking mercy and understanding with respect to degree and penalty. If the plea of guilty is not itself constitutionally infirm, it would appear that one who has so confessed may not rely upon the constitution to free him. It is within this context that we must consider the claims of error presented here.

1. *Ex Post Facto.* The United States Constitution, Art. 1, § 10, provides that: "No State shall * * * pass any * * * ex post facto Law, * * *." The appellant contends that the legislative amendment (Stats. Nev. 1959, ch. 448) requiring three judges, rather than one, to determine the degree of the crime, and pronounce sentence, is an ex post facto law as to him and may not constitutionally be applied. Indeed, he argues that there is no longer present in Nevada a procedure for handling his case. A one judge court may not now determine degree, and impose sentence, because that law has been repealed. A three judge court may not do so because that proviso is ex post facto and unconstitutional as applied to him. Nor may we order that his guilty plea be withdrawn and a not guilty plea substituted, because he does not want a jury trial. In short, he asks that we order his liberty, notwithstanding his guilt. Of course, we cannot accommodate him. None of the cases relied upon by the appellant (Kring v. Missouri, 107 U.S. 221 (1882); Thompson v. Utah, 170 U.S. 343 (1898); Putty v. United States, 220 F.2d 473 (9th Cir. 1955); Mallett v. North Carolina, 181 U.S. 589 (1901); Malloy v. South Carolina, 237 U.S. 180 (1915); Beazell v.

Ohio, 269 U.S. 167 (1925); Hallock v. United States, 185 F. 417 (8th Cir. 1911); United States v. Hall, 26 Fed.Cas. 84 (No. 15285) (C.C.D. Pa. 1809) bears any resemblance to this case. None of them involves a confession of guilt in open court. Notwithstanding this difference, we are directed to a quotation from the Kring case, supra, and to certain testimony in the record that demands (according to the appellant) the conclusion that the present law may not be constitutionally applied to him. The quotation from Kring is: "We are of the opinion that any law passed after the commission of an offence which, in the language of Mr. Justice Washington, in United States v. Hall, 'In relation to that offence, or its consequences, alters the situation of a party to his disadvantage,' is an ex post facto law * * *."; and the testimony is that of a psychologist whose opinion is that one judge would, in all probability, be more lenient than three in specifying degree and fixing sentence.[2]

Because of this testimony Rainsberger argues that, had a three judge court been provided for when he entered his plea at arraignment, he would not have chosen to plead guilty, for it is psychologically too easy for three judges to be severe. As the law then in effect provided for a single judge to determine the degree of the crime and impose sentence, he chose to place that awesome responsibility on that judge rather than to face the probable consequences of a jury trial. The nature of the choice open to him at the time of his arraignment was changed by the legislative amendment to his detriment and, upon remand for another hearing before a

---

[2]The psychologist sent out slightly over 300 questionnaires to supreme court justices in each of the 49 states. (No questionnaires were sent to the Nevada justices.) One hundred and fifty-two were returned, of which number 110 gave definitive answers. Sixty-eight (62%) of those who answered definitively believed that one judge would be more lenient than three with respect to the determination of the degree of the crime and penalty. Forty-two (38%) believed that there would be no difference between a single judge and a panel of three. The psychologist concluded that the reason for this result was: "* * * that the judge who is a member of a panel shares the responsibility for the decision and also has the comfort of knowing that the others agree with him, whereas a single judge does not have this to support his rather serious decision in such a case."

three judge court, he was deprived of the kind of a choice that one accused of murder is constitutionally entitled to enjoy. The change in the law "altered the situation to his disadvantage." The contention is wholly unsound. So far as the law is concerned one's plea to a charge of murder is to be governed by the truth or falsity of the charge. The legislative purpose in establishing a procedure to conclude a murder case, in which the accused pleads guilty, was not to provide psychological alternatives. Rather, its purpose was to avoid a senseless trial (for without the statutory scheme a plea of not guilty would be required) and to provide a fair procedure for disposition of the case. One who has announced his guilt in a court of law does not thereafter possess a constitutional right with respect to the procedural follow-through activated by his plea, nor does a change in that procedure of the kind here present have constitutional implications. Cf. People v. Ward, 50 Cal.2d 702, 328 P.2d 777.

■■■■ ■■

The ex post facto issue in this case was presented to the Court of Appeals for the Ninth Circuit, but not decided. Rainsberger v. Lamb, 313 F.2d 195 (9th Cir. 1963). However, Judge Magruder, writing for the court, made the following statement: "Personally, I would be willing to assume without deciding that appellant has exhausted his remedies under the state law, * * * after which I would decide the case on the merits, since it seems clear to me that no constitutional rights have been violated." We agree with his expression that "no constitutional rights have been violated." We hold that the 1959 amendment to NRS 200.030(3) is not an ex post facto law.

■■■■■ ■■

2. *The Right to Counsel and Due Process.* Rainsberger was without counsel when he confessed on November 14, 1958. He was not represented by counsel at the preliminary hearing. Following his plea of guilty to the charge of murder, his confession was received in evidence during the hearing before the three judge court as relevant to degree and penalty. It was admitted over

the objection that it was not voluntarily given. The contention is now made that the judgment below is void because federal constitutional protections were not observed. The appellant's position rests primarily upon Escobedo v. Illinois, 378 U.S. 478 (1964), (decided since the judgment below); Hamilton v. Alabama, 368 U.S. 52 (1961); White v. Maryland, 373 U.S. 59 (1963); and Haynes v. Washington, 373 U.S. 503 (1963). A circumstance of major significance present here was not present in any of the cited cases. In the instant matter the accused voluntarily, and with the advice of competent counsel, entered his plea of guilty to the charge of murder when arraigned in the district court. The issue of guilt was thereby removed from the case. The contention is not offered that his plea in open court was tainted by a failure to observe constitutional requisites. The constitutional protections are primarily concerned with the trial of those who profess their innocence. Cf. In re Lopez and Winhoven, 42 Cal.Rptr. 188, 398 P.2d 380 (decided January 29, 1965), holding that the right to counsel, as established in Escobedo and Massiah, does not apply retroactively on collateral attack. One of the reasons given for that holding was that new constitutional interpretations should be used only to protect the innocent defendant against the possibility of conviction of a crime he did not commit, and the denial of counsel under Escobedo does not affect the issue of guilt. See also Morford v. State, 80 Nev. 438, 395 P.2d 861. For this reason alone, the case before us and those relied upon by the appellant dealing with the right to counsel are poles apart. Indeed, had Rainsberger pleaded not guilty, been tried and convicted, the doctrine of Escobedo would not require a reversal for, as will hereinafter be shown, the confession here involved was unsolicited and voluntary. Whatever the divergent views regarding the scope of Escobedo (Compare Bean v. State, 81 Nev. 25, 398 P.2d 251; People v. Hartgraves, 31 Ill.2d 375, 202 N.E.2d 33, with State v. Neely, 395 P.2d 557 (Or. 1964); People v. Dorado, 40 Cal.Rptr. 264, 394 P.2d 952; and People v. Dorado, 42 Cal.Rptr. 169, 398 P.2d 361, decided January 29, 1965), we are confident that the ruling does not embrace the case where

the confession is unsolicited and voluntary. We hold that where, as here, one accused of murder voluntarily pleads guilty upon arraignment in open court, with the advice of competent counsel, the federal constitutional right to counsel is not violated, notwithstanding the fact that the accused, before entering his guilty plea, was without counsel when he confessed the crime and at the preliminary hearing.

Though the issue of guilt was removed from this case by the plea of guilty, there still remained for decision the issues of degree and penalty. Relevant evidence was required to resolve them. The confession and much other evidence was received for that purpose. Of course the confession, if involuntarily made, would not be admissible. The reliability of a confession is still the central due process question even though, within certain well defined limits (Escobedo v. Illinois, supra; Massiah v. United States, 377 U.S. 201 (1964)), a violation of the right to counsel requirement may also preclude its admission as evidence. It is unthinkable that a coerced confession could be used in determining degree and penalty. We therefore turn our attention to the totality of circumstances disclosed by the record.

The appellant's argument is that his confession was coerced "due to being held incommunicado by the police for over nine consecutive days in a cramped cell under the glare of a bright, ever present light, while suffering intense physical pain, and without the aid and comfort of friends, relatives, legal counsel, or medical attention." As we read the record, the three judge panel was fully justified in concluding otherwise. When the present homicide was committed Rainsberger was on parole from California. He had there been convicted on two counts, charging robbery. The circumstances of those crimes are strikingly similar to the facts here disclosed. It cannot be said that he was unfamiliar with legal criminal processes. The contention is not advanced that he lacks intellectual capacity. He obviously does not.

Following his arrest on November 4, 1958, he was interrogated at the sheriff's office for about two hours, during which he related a tale about having heard voices that compelled him to sacrifice a victim he had seen. Some incriminatory statements about the crime under investigation were elicited, though the tale does not qualify as a confession, State v. Behiter, 55 Nev. 236, 29 P.2d 1000. No objection was made when the deputy sheriff testified to that conversation with Rainsberger. The confession to which objection was made at the hearing, was obtained ten days later, on November 14, 1958. On that occasion Rainsberger sent word to a deputy sheriff that he wanted to talk to him. Talk he did. A full confession of his crime was voluntarily given in the presence of three persons (the stenographer and two deputy sheriffs), transcribed, signed and witnessed. His confession was not coerced. He asked to speak out. His statements were not solicited. There is no evidence that he was abused by the police during the ten days of his confinement before he confessed. He was not threatened, nor were promises made. Though it is true that he complained of stomach pains, the services of a physician were neither requested nor needed. His jail cell was apparently as good as the area could then provide. Though the United States Supreme Court has noticed and held improper many sophisticated and some not so sophisticated methods of coercion (Watts v. Indiana, 338 U.S. 49 (1949); Spano v. New York, 360 U.S. 315 (1959); Reck v. Pate, 367 U.S. 433 (1961); Haynes v. Washington, 373 U.S. 503 (1963)), the case before us is not within the ambit of its rulings.

*3. Other Claims of Error.* The remaining assignments of error do not rest upon the constitution. It is asserted that the cause of death is not established by the proof, nor is a willful, deliberate and premeditated killing shown. The assertion is not valid. The corpus delicti (that is, the fact of death, and that such death resulted not from accident or suicide, but from the criminal agency of another person—State v. Fouquette, 67 Nev. 505, 221 P.2d 404; Sefton v. State, 72 Nev. 106, 295

P.2d 385) is abundantly shown by Rainsberger's confession and the testimony of the pathologist. We shall not repeat that evidence here, because when one pleads guilty to murder the state is not required to prove the corpus delicti. Rainsberger v. State, 76 Nev. 158, 350 P.2d 995 (prior appeal); Ramos v. State, 58 Nev. 446, 83 P.2d 147. The three district judges were justified in finding that the homicide was murder in the first degree, either on the felony murder doctrine, NRS 200.030(1), or upon the facts apart from the robbery. Rainsberger walked up behind the victim as she was getting into her car at a parking lot. He exhibited a knife, told her to drive him out of town and give him her money. At his direction she drove him out of town and turned off onto a graveled road. She was told to stop, and take off her slip and stockings. Rainsberger then used those garments to tie her hands behind her. The victim started to yell. Rainsberger gagged her. The confession then reveals: "Rainsberger: I think she got one of her arms lose because she kept trying to reach for the knife. I had the knife laying on the seat beside me. I kept pushing her off * * * and she came right over the top of me, out the other side away from the driver's seat. I went after her and I had a hold on her and I picked up the knife and I just started slashing. I hit her in the back once, I remember that. All it did was stop her, stunned her. I had the knife in my left hand, I must have. I grabbed a hold of her shoulder or her hair or something and I threw her down on the ground or something and then I started to using the knife.

"Capt. O'Reilly: Was she standing or on the ground then?

"Rainsberger: On the ground, I am pretty sure. Then I got back in the car, in the back seat, I knocked her purse over and started looking for money and found her wallet and I picked it up and I got in the front seat and I started out to drive." He took the victim's wallet which contained ten dollars.

The testimony of the pathologist, and his written report, show seven distinct knife stab wounds in the victim's neck and throat. This evidence, and the confession, warrants an inference that, before the first wound was made, Rainsberger had formed a deliberate design to

kill. Kuk v. State, 80 Nev. 291, 392 P.2d 630. The homicide and the robbery are fully established. State v. Mangana, 33 Nev. 511, 112 P. 693; State v. Ceja, 53 Nev. 272, 298 P. 658. The specification of first degree murder was not error.

The court-appointed counsel for the appellant has discharged his assigned task with skill and devotion. We commend him. The lower court is directed to give him the certificate specified in subsection 3 of NRS 7.260 to enable him to receive compensation for his services on this appeal. The judgment and sentence below is affirmed.

McNAMEE, C. J., and BADT, J., concur.