### WILLIE LEE GASQUE v. STATE OF NORTH CAROLINA.

(Filed 20 September, 1967.)

**1. Constitutional Law § 32—**

The guarantee to a defendant of the right to be represented by counsel in a criminal case does not apply to every stage of the proceedings but only to the "critical stages," and what constitutes a critical stage is to be determined both from the nature of the proceedings and from the facts in each case.

**2. Same; Criminal Law § 21—**

A preliminary hearing is not prerequisite to the finding of an indictment in this State nor a critical stage of the proceeding, and a defendant may waive the hearing and consent to be bound over to the Superior Court to await grand jury action without forfeiting any defense or right available to him; therefore, the denial of defendant's request for counsel at the hearing does not deprive defendant of any constitutional right.

**3. Same—**

Defendant's contention that the preliminary hearing afforded the only opportunity to ascertain the evidence of the State before trial, thereby requiring the presence of counsel to obtain this information, is without merit, since the State's witnesses can be examined by defendant before trial by permission of the court or the solicitor, or by resort to the writ of *habeas corpus*.

323

GASQUE *v.* STATE.

**4. Rape § 9—**

An indictment under G.S. 14-26, charging defendant with ravishing and carnally knowing a female child under the age of twelve years, need not allege that the child was abused.

**5. Criminal Law § 161—**

The Supreme Court may consider an assignment of error in a capital case, although the assignment is defective in compelling the Court to search through the record to find the precise question involved.

**6. Rape § 10;   Criminal Law § 34—**

In a prosecution for carnally knowing a female child under the age of twelve years, testimony of the prosecuting witness that the defendant had made improper advances to her approximately four years prior to the offense charged is competent in evidence in corroboration of the offense charged.

**7. Criminal Law § 161—**

The admissibility of evidence challenged only by an exception is considered by the Supreme Court in this capital case, although the jurisdiction of the Court on appeal is ordinarily limited to questions of law presented both by objections duly entered and exceptions duly taken to the rulings of the lower court.

**8. Rape § 10—**

Testimony by prosecutrix' grandmother as to statements of the prosecutrix that the defendant had intercourse with her on the date of the offense and had made improper advances approximately four years prior to the offense is competent for the purpose of corroborating the testimony of prosecutrix to like effect.

**9. Same;   Criminal Law § 169—**

In a prosecution for carnally knowing a female child under the age of twelve years, the admission of testimony of prosecutrix' aunt that prosecutrix had stated that the defendant had had intercourse with her many times prior to the date of the offense charged, even though technically incompetent as corroborative evidence in that it exceeded the scope of prosecutrix' testimony, *held* not prejudicial under the facts of this case, there being plenary evidence of defendant's guilt of the crime charged and the question of prosecutrix' consent not being material to the offense.

BOBBITT, J., dissenting.

HIGGINS AND SHARP, JJ., join in dissenting opinion.

ON *certiorari* from *Hobgood, J.,* 4 January 1965 Criminal Session of CUMBERLAND to permit petitioner appellant *in forma pauperis* by court-appointed counsel to perfect a delayed appeal.

This is a criminal action prosecuted on an indictment charging appellant on 14 August 1964, with force and arms at and in Cumberland County, "did, unlawfully, wilfully and feloniously ravish

and carnally know one Anna Jean Gasque, a female, under the age of twelve years by force and against her will."

At the trial appellant, an indigent, was represented by his court-appointed counsel, James C. MacRae. Plea: Not guilty. Verdict: Guilty of rape as charged in the indictment with recommendation of life imprisonment.

From a judgment of life imprisonment in the State's prison, appellant appeals.

*Attorney General T. W. Bruton and Deputy Attorney General James F. Bullock for the State.*

*W. Ritchie Smith, Jr., for petitioner appellant.*

PARKER, C.J. We allowed appellant's petition for *certiorari* to bring up his case on a delayed appeal of his conviction. Appellant, an indigent, is represented in this Court by his court-appointed counsel, W. Ritchie Smith, Jr., a member of the Cumberland County Bar. The case on appeal has been agreed to by appellant's counsel and the State, and the case on appeal and the brief of appellant have been mimeographed in the same manner as if he were a rich man.

Appellant assigns as error, based upon his exception No. 3, as stated in the agreed case on appeal: "No lawyer was appointed to represent the defendant at his preliminary hearing in the Recorder's Court of the City of Fayetteville, and the defendant, without counsel, waived his hearing and was bound over to the Superior Court without privilege of bond." Appellant stated in his petition for post conviction review that he requested counsel at the preliminary hearing because he was an indigent, and the court refused his request. Jane W. Herring, judge of the recorder's court of the city of Fayetteville, states in an affidavit:

"That the undersigned appointed no attorney to represent Willie Lee Gasque at said Preliminary Hearing, and the undersigned does not now recall whether Willie Lee Gasque was represented by counsel at said hearing.

"That the undersigned does not recall whether Willie Lee Gasque waived his right to be represented by counsel at said hearing."

The warrant in the recorder's court charged the appellant with the commission of the crime of rape on one Anna Jean Gasque, a female child under the age of twelve years, to wit, eleven years of age, which is a capital felony in this jurisdiction punishable by death, unless the jury recommends at the time of rendering its ver-

dict in open court that the punishment shall be imprisonment for life in the State's prison. G.S. 14-21.

Coming as it does in the wake of *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 93 A.L.R. 2d 733 (1963), the right to counsel here presented is of particular significance. *Gideon* over-- ruled *Betts v. Brady,* 316 U.S. 455, 86 L. Ed. 1595 (1942), and thereby abolished the distinction between the right to counsel in capital and non-capital cases in State prosecutions. *Gideon* was concerned with the right of an accused to counsel at trial and did not involve the right of counsel at a preliminary hearing. or arraignment. The situation at bar is markedly different from that of the *Gideon* case. Well in advance of the trial in the Superior Court on the charge of the capital felony of rape, James C. MacRae, an experienced member of the Cumberland County Bar, was appointed by the court to represent the appellant, an indigent person, and he represented the appellant throughout the trial. Bailey, J., at the 7 November 1966 Session of Cumberland, entered an order appointing W. Ritchie Smith, Jr., a member of the Cumberland County Bar, to represent appellant and directing him to file a petition for a writ of *certiorari* with the Supreme Court to bring up his case on appeal, and directed Cumberland County to pay the cost of the transcript and the cost of appeal in the Supreme Court. Bailey, J., in his order states:

"(A)nd it appearing to the Court from the statement of the petitioner and the statement to this court by his appointed attorney, Mr. Ritchie Smith of the Cumberland County Bar, that the petitioner now states in open Court that he had every opportunity for witnesses, that he and his attorney had time and opportunity to prepare for a criminal trial, but that it appears from the transcript of the record that the petitioner did in fact give notice of appeal and there is no showing in the record of any attorney having been appointed to perfect said appeal; and it appearing to the Court that through a misunderstanding that his court-appointed counsel at his original trial, to wit, James C. McRae, Jr., *(sic)* through inadvertence and misunderstanding did not perfect such appeal, and that said petitioner ought not to be denied his right of appeal."

Nevertheless, apart from any assertion that he was not given a fair trial, or that he was in fact prejudiced, appellant contends that his conviction is defective because he was not represented by counsel when he waived preliminary hearing in the recorder's court. In support of this proposition, appellant relies on *Powell v. Alabama,* 287 U.S. 45, 77 L. Ed. 158, 84 A.L.R. 527; *Crooker v. California,*

357 U.S. 433, 2 L. Ed. 2d 1448; *Hamilton v. Alabama,* 368 U.S. 52, 7 L. Ed. 2d 114; *White v. Maryland,* 373 U.S. 59, 10 L. Ed. 2d 193; *Pointer v. Texas,* 380 U.S. 400, 13 L. Ed. 2d 923; *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974.

*Hamilton v. Alabama, supra,* involved a State capital conviction where the petitioner had pleaded not guilty at his arraignment. At the time of entering this plea, petitioner was not represented by counsel, although he did have counsel at the trial. The Supreme Court reversed his conviction stating: "Whatever may be the function and importance of arraignment in other jurisdictions, . . . in Alabama it is a critical stage in a criminal proceeding." The Court enumerated several defensive maneuvers which are waived in Alabama if not asserted at the arraignment: the defense of insanity, pleas in abatement, and improper grand jury selection. Whatever happens at arraignment in Alabama, therefore, may well affect the whole trial. The Court took care in the *Hamilton* case to indicate, however, the "differing consequences" that attach to arraignment in the various jurisdictions.

While *White v. Maryland, supra,* is factually distinguishable from *Hamilton v. Alabama, supra,* similar principles governed. In the *White* case petitioner had entered a guilty plea at a Maryland preliminary hearing when he was not represented by counsel. Later at his arraignment, when he did have counsel, petitioner entered pleas of not guilty and not guilty by reason of insanity. The guilty plea made at the preliminary hearing was introduced in evidence at the trial. Under these circumstances, the Court held that the preliminary hearing was a "critical" stage in the proceedings and there was no need to determine whether prejudice resulted from the absence of counsel. It is clear from the Court's opinion that what made the preliminary hearing "critical" was that a guilty plea had been entered and that the plea had been used against petitioner at the trial. Thus, the Court commented: "Whatever may be the normal function of the 'preliminary hearing' under Maryland law, it was *in this case* as 'critical' a stage as arraignment under Alabama law." (Emphasis ours.)

In *Pointer v. Texas, supra,* at the defendant's trial in a Texas State court on a charge of robbery, the State, over defendant's objections, introduced the transcript of a witness' testimony given at the preliminary hearing at which defendant was not represented by counsel and had no opportunity to cross-examine the witness. The State showed that the witness had moved out of Texas with no intention to return. Defendant was convicted and his conviction was affirmed by the Texas Court of Criminal Appeals, 375 S.W. 2d 293. On *certiorari,* the Supreme Court of the United States reversed. In

an opinion by Black, J., expressing the views of seven members of the Court, it was held that the facts as stated above constituted a denial of defendant's constitutional right of confrontation. Black, J., in his opinion, said:

"In this court we do not find it necessary to decide one aspect of the question petitioner raises, that is, whether failure to appoint counsel to represent him at the preliminary hearing unconstitutionally denied him the assistance of counsel within the meaning of *Gideon v. Wainwright, supra.* In making that argument petitioner relies mainly on *White v. Maryland,* 373 U.S. 59, 10 L. Ed. 2d 193, 83 S. Ct. 1050, in which this Court reversed a conviction based in part upon evidence that the defendant had pleaded guilty to the crime at a preliminary hearing where he was without counsel. Since the preliminary hearing there, as in *Hamilton v. Alabama,* 368 U.S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157, was one in which pleas to the charge could be made, we held in *White* as in *Hamilton* that a preliminary proceeding of that nature was so critical a stage in the prosecution that a defendant at that point was entitled to counsel. But the State informs us that at a Texas preliminary hearing, such as is involved here, pleas of guilty or not guilty are not accepted and that the judge decides only whether the accused should be bound over to the grand jury and if so whether he should be admitted to bail. Because of these significant differences in the procedures of the respective States, we cannot say that the *White* case is necessarily controlling as to the right to counsel. Whether there might be other circumstances making this Texas preliminary hearing so critical to the defendant as to call for appointment of counsel at that stage we need not decide on this record, and that question we reserve. In this case the objections and arguments in the trial court as well as the arguments in the Court of Criminal Appeals and before us make it clear that petitioner's objection is based not so much on the fact that he had no lawyer when Phillips made his statement at the preliminary hearing, as on the fact that use of the transcript of that statement at the trial denied petitioner any opportunity to have the benefit of counsel's cross-examination of the principal witness against him. It is that latter question which we decide here."

The precise questions decided in *Crooker v. California, supra,* are not the same as in the case before us. In that case, the opinion as written by Clark, J., expressing the views of five members of the Court, said:

"Petitioner, however, contends that a different rule should determine whether there has been a violation of right to counsel. He would have every state denial of a request to contact counsel be an infringement of the constitutional right *without regard to the circumstances of the case.* In the absence of any confession, plea or waiver — or other event prejudicial to the accused — such a doctrine would create a complete anomaly, since nothing would remain that could be corrected on new trial."

*Miranda v. Arizona, supra,* is not in point on the precise question we are considering, for the reason that that case deals with the admissibility of statements obtained from an individual who is subjected to custodial police interrogation, and the necessity for procedures which assure that the individual is accorded his privilege against self-incrimination. There was no custodial interrogation in the instant case, according to the record before us.

*Powell v. Alabama, supra,* decided that the right to appointment of counsel sufficiently in advance of trial to permit effective preparation for trial was an element of due process of law guaranteed the accused by the Fourteenth Amendment. The Supreme Court said: "Even the intelligent and educated layman . . . requires the guiding hand of counsel at every step in the proceedings against him." But, despite the sweep of the Supreme Court's language it seems to be settled law that the guarantee of counsel applies not to every step in the criminal proceedings but only to what has come to be denominated with some circularity, "critical stages" of the criminal proceeding.

From *Hamilton v. Alabama* and *White v. Maryland,* it is plain that there is no arbitrary point in time at which time right to counsel attaches in pre-trial proceedings. Even in *White,* decided after *Gideon,* the Court did not mention any requirement that counsel be present "at every stage." Rather, the "critical" point is to be determined both from the nature of the proceedings and from that which actually occurs in each case. Our initial concern in the case at Bar, therefore, is whether the pre-trial procedure under the particular facts here was of such consequence that it was a "critical" stage of the proceedings. More specifically, did the pre-trial proceedings become "critical" when appellant, an indigent without counsel, waived his preliminary hearing in the recorder's court of the city of Fayetteville and was bound over to the Superior Court of Cumberland County for grand jury action?

This is said in *S. v. Hargett,* 255 N.C. 412, 121 S.E. 2d 589:

"A preliminary hearing is not an essential prerequisite to the finding of an indictment in this jurisdiction. 'We have no

statute requiring a preliminary hearing, nor does the State Constitution require it. It was proper to try the petitioner upon a bill of indictment without a preliminary hearing.' "

In *S. v. Hackney,* 240 N.C. 230, 81 S.E. 2d 778, it is said:

"Unless there is a statute requiring it, it is the general, if not the universal, rule in the United States that a preliminary hearing is not an essential prerequisite to the finding of an indictment. Such hearing is unknown to the common law. 27 Am. Jur., Indictments and Informations, p. 596; 22 C.J.S., Crim. Law, p. 484; *U. S. ex rel. Hughes v. Gault,* 271 U.S. 142, 70 L. Ed. 875."

In *People v. Daniels,* 49 Ill. App. 2d 48, 199 N.E. 2d 33 (1964), an Illinois appellate court saw no deprivation of the accused's right to counsel since "the record before us is silent as to any occurrences at the preliminary hearing. There is neither a claim nor any showing that absence of counsel at the preliminary hearing or a failure to make an earlier appointment of counsel in any manner prejudiced the defendant or in any way adversely infected or contaminated the subsequent proceedings in this case. A preliminary hearing in Illinois is not a 'critical stage' where rights or defenses must be raised or lost and hence the right to counsel in such a proceeding does not, *ipso facto,* obtain."

To the same effect, see *Warner v. Commonwealth,* 386 S.W. 2d 455, 456 (Ky. 1965); *Commonwealth v. O'Leary,* 198 N.E. 2d 403 (Mass. 1964), accused stood mute at preliminary hearing and court entered not guilty plea on his behalf; *Matthews v. State,* 206 A. 2d 714 (Md. 1965), plea of not guilty entered at preliminary hearing; *Bonner v. Director,* 206 A. 2d 708 (Md. 1965), defendant pleaded not guilty at preliminary hearing; *Rainsberger v. State,* 399 P. 2d 129 (Nev. 1965), plea at preliminary was not prejudicial because, later, at arraignment, defendant again pleaded guilty, with advice of counsel; *State v. Baier,* 399 P. 2d 559 (Kan. 1965), defendant without counsel waived preliminary hearing but, at trial, while represented by appointed counsel, pleaded guilty; *United States ex rel Maisenhelder v. Rundle,* 229 F. Supp. 506 (E.D. Pa. 1964), plea or testimony at preliminary hearing was never put before trial court (Also see, *Commonwealth ex rel Maisenhelder v. Rundle,* 198 A. 2d 565 (Pa. 1964); *Sanders v. Cox,* 395 P. 2d 353 (N.M. 1964), non-capital offender pleaded guilty at trial when represented by counsel, guilty plea at preliminary hearing, while not represented, was not prejudicial; *State v. Dennis,* 204 A. 2d 868 (N.J. 1964), proceedings or plea at preliminary hearing never brought before trial court, nor even divulged in appellate opinion; *Johnson v. State,* 207 A. 2d 643

(Md. 1965), where defendant was charged with three capital crimes; (1) murder of seven-year-old girl, (2) assault with intent to rape the seven-year-old girl, and (3) forcible rape of a neighbor woman, convicted of each, and sentenced to death three times. In the latter case the Court affirmed the conviction, and said:

> "With reference to the claim that he did not have counsel at his preliminary hearing in Municipal Court, it is not alleged or shown that he entered any plea there, or that any plea or statement he may have made there was introduced at his trial in the Criminal Court, and thus the preliminary hearing was not such a critical stage of the proceedings as to require the presence of counsel. . . . As to alleged lack of counsel at his arraignment, the record shows that court appointed counsel entered pleas of not guilty on his behalf at the arraignment."

For numerous other cases to the same effect, see 6 Seventh Dec. Dig., Con. Law, key No. 263.

Other courts have found there to be no constitutional injury in the failure to appoint counsel where no plea offered at the preliminary hearing could be offered in evidence at trial, *State v. White*, 133 S.E. 2d 320 (S.C. 1963); *DeToro v. Pepersack*, 332 F. 2d 341 (4th Cir. 1964); or where the accused could not under state law offer a plea at the preliminary hearing, *Williams v. State*, 237 F. Supp. 360 (E.D.S.C. 1965); or where the accused did not in fact offer a plea, *Mercer v. State*, 237 Md. 479, 206 A. 2d 797 (1965); *Ronzzo v. Sigler*, 235 F. Supp. 839 (D. Neb. 1964). And most states adhere to the view that the accused is not denied due process of law by the failure to appoint counsel at the preliminary hearing if the preliminary hearing is not a critical stage. *State v. Osgood*, 123 N.W. 2d 593 (Minn. 1963); *People v. Sedlak*, 256 N.Y.S. 2d 84 (N.Y. Sup. Ct. 1965); *State v. Richardson*, 399 P. 2d 799 (Kan. 1965); *Bussey v. Maxwell*, 177 Ohio St. 111, 202 N.E. 2d 698 (1964); *Ronzzo v. Sigler, supra; People v. Morris*, 30 Ill. 2d 406, 197 N.E. 2d 433 (1964); *Freeman v. State*, 392 P. 2d 542 (Idaho 1964).

It has been the practice in this State for generations that a defendant can waive a preliminary examination and be bound over to the Superior Court. See G.S. 15-85. The hearing of probable cause before a committing magistrate or inferior judge can be readily dispensed with by the State in this jurisdiction since, as stated above, a preliminary hearing is not an essential prerequisite to the finding of an indictment.

Appellant's waiving a hearing in the recorder's court of the city of Fayetteville and being bound over by that court to the Superior Court for grand jury action cannot, therefore, be characterized as

"critical" as is arraignment in Alabama. At the trial in the Superior Court appellant had every opportunity to present any defense whatever that was available initially, even a motion to quash the indictment.

There is nothing in the record before us to indicate that appellant was asked any question by the committing inferior judge or that he made any statement of any kind whatsoever before the committing inferior judge. No evidence of the preliminary hearing was introduced at the trial in the Superior Court. No evidence of an admission or confession by the appellant was admitted at the trial in the Superior Court. All that appears in the record before us is that the appellant, without counsel, waived a preliminary hearing, and that it appears in an affidavit of his that the warrant at the preliminary hearing charged him with the capital offense of rape and that he requested counsel, and his request was not granted. In the trial no mention was made of appellant's waiving a preliminary hearing. Under these facts, failure to supply counsel cannot be said to be a deprivation of any constitutional right of appellant, because under the specific facts here appellant's waiving of a preliminary hearing was not such a "critical stage" of the proceeding as to require the presence of counsel.

The appellant contends a preliminary hearing is the only opportunity a defendant has, prior to the actual trial, to learn what evidence he must defend against and he needed counsel at the preliminary hearing in order to obtain this information, and, if there was not sufficient evidence against him, he should be discharged for lack of probable cause. This contention is without merit for the following reasons: Appellant at his trial in the Superior Court was represented by court-appointed attorney, James C. MacRae, an experienced member of the Cumberland County Bar and a son and partner of an ex-Special Judge of the Superior Court, and a great grandson of a former member of this Court and a former Dean of the University of North Carolina Law School. He could easily have found out the evidence against the appellant by asking the court's permission to examine the State's witnesses. It is a custom in this State for a solicitor prosecuting a capital offense to give the attorney for the defendant permission to talk to the State's witnesses. In addition, if Mr. MacRae had desired information as to the State's witnesses, he could have compelled the disclosure by a writ of *habeas corpus*. There is nothing in the record to indicate that Mr. MacRae did not talk to the State's witnesses before the trial in the Superior Court.

In the oft cited case of *United States ex rel. Cooper v. Reincke,* 333 F. 2d 608 (2d Cir. 1964), cert. den. 379 U.S. 909, 13 L. Ed. 2d

181, the United States Court of Appeals reasoned that the pre-liminary hearing could not be deemed a critical stage. The Court said:

> "The Connecticut hearing in probable cause has been ac-curately characterized as a mere ' "inquest" made to determine the existence of probable cause, and to discharge the accused if none exists.' (Citing authority.) The finding of probable cause is not final and it cannot be used against an accused on the trial before the Superior Court. (Citing authority.) The hear-ing in probable cause and appearance before a judge or com-mitting magistrate can be readily dispensed with by the State since an original information may be filed in the Superior Court. In that event no hearing in probable cause is held. (Citing authority.) And, no such hearing is provided where the State's Attorney chooses in the first instance to obtain a bench warrant from the Superior Court. (Citing authority.)
>
> "The Connecticut hearing in probable cause cannot, there-fore, be characterized as critical as is arraignment in Alabama. Indeed, it can hardly be termed a proceeding against the ac-cused; to the contrary, it appears to operate entirely for the accused's benefit. And the mere fact that an accused is re-quired to plead does not in itself demand a contrary conclu-sion where the plea entered is a self-serving denial of guilt. At trial, appellant had every opportunity to present any defense that was available initially. Under these facts failure to supply counsel at this stage in the proceedings cannot be said to be a deprivation of a constitutional right."

In *Freeman v. State,* 392 P. 2d 542, 547 (Idaho, 1964), the Su-preme Court of Idaho states:

> "While it is recognized that an accused has a right to coun-sel at every stage of proceedings, we do not understand this to mean that he must be so represented in the preliminary pro-cesses which take place primarily for the purpose of ascer-taining whether a crime has been committed and whether there are reasonable grounds to believe that the accused has com-mitted it, and particularly where no prejudice has befallen him."

The headnote in *Gallegos v. Cox,* 341 F. 2d 107, cert. den. 381 U.S. 918, 14 L. Ed. 2d 438 (1965), correctly summarizes the decision as follows:

> "State prisoner, who was serving sentence imposed for un-lawful sale of marihuana, brought *habeas corpus* proceeding.

The United States District Court for the District of New Mexico, H. Vearle Payne, J., entered judgment dismissing the petition, and prisoner appealed. The Court of Appeals held that the District Court properly dismissed the petition alleging that sentence was invalid because prisoner had not been furnished counsel at preliminary hearing and later on arraignment at which he pleaded not guilty to indictment, where prisoner did not testify at the preliminary hearing, and no contention was made that any incriminating statements were made then or on his arraignment, since no prejudice was shown."

In 5 A.L.R. 3rd there is a lengthy annotation entitled, "Accused's Right to Assistance of Counsel at or Prior to Arraignment," beginning on page 1269 and ending on page 1399. In this annotation beginning on page 1314 and ending on page 1342 there is a discussion of counsel at a preliminary hearing. On pages 1315 to 1319 there are listed and analyzed cases that affirm the right, and on pages 1319 to 1342 there are cases listed and analyzed where the right is denied.

The recent decisions of the Supreme Court of the United States, and particularly the decision in *Miranda v. Arizona, supra,* a six to three decision, and their meticulous effort to preserve every possible right of a defendant have apparently ignored the rights of protection of the victims who have been robbed, raped, and murdered. They seem to be forgotten people. In a dissenting opinion in the *Miranda* case written by Harlan, J., with Stewart, J., and White, J., joining in the dissenting opinion, it is said: "I believe the decision of the Court represents poor constitutional law and entails harmful consequences for the country at large. How serious these consequences may prove to be only time can tell." The crime rate is rapidly increasing because of the shackling effects of those decisions upon law enforcement officers. The streets of our big cities, and in particular of the Capital City of Washington, are not safe for law-abiding citizens. No reasonable person can object to the preservation of every reasonable constitutional right of a defendant to a fair trial, but at the same time the rights of the suffering public are entitled to recognition and protection. The country is aroused over the lawlessness prevailing in our midst.

The appellant's assignment of error that the court failed to appoint an attorney to represent him at his preliminary hearing, the appellant being an indigent at such time, is overruled. There are thousands of committing justices and inferior judges throughout the State who accept complaints and hold hearings at almost every hour of the day and night. To require counsel to be appointed by these

courts and to attend proceedings before the minor judiciary, in some instances many miles away, just would not work.

Assignment of error No. 2 reads as follows: "The Bill of Indictment does not sufficiently charge the offense of carnally knowing and abusing a female child under the age of twelve years in that it does not allege that Anna Jean Gasque was abused."

The indictment upon which appellant was tried is set forth above. This assignment of error is overruled upon authority of *S. v. Gibson,* 221 N.C. 252, 20 S.E. 2d 51; *S. v. Monds,* 130 N.C. 697, 41 S.E. 789.

This is a brief summary of the State's evidence:

On 14 August 1964, Anna Jean Gasque was eleven years old. She became twelve years old on 26 August 1964. On the night of 14 August 1964 her mother and Edna were away from home at work and she was there with the babies. At about 9:30 p.m. that night appellant, who is her stepfather, came home. He smelled like he had been drinking. He went into his room, and called Anna Jean Gasque into his room. At the time he was wearing Bermuda shorts and no shirt. The babies were asleep. She went into his room. At that time she had on her nightgown and panties. He pulled her down on his bed and had sexual intercourse with her without her consent, by violence and against her will. She was lying on her back crying, and he was on top of her. He told her if she ever told anybody he would kill her. At that time her mother and Edna came home, and he told her to get up. A few days before she was twelve years old, she told her grandmother about it. On 1 September 1964 Dr. Alexander Webb, Jr., an admitted medical expert in the field of surgery, with gynecological training, made a pelvic examination of Anna Jean Gasque. In his opinion, based upon his examination, her hymen had been broken and her female organ had been penetrated. Her grandmother corroborated her in respect to what she told her.

This is a brief summary of the appellant's evidence: Appellant offered the testimony of two witnesses. The testimony of appellant's witness, Joseph Melvin Byrd, is in substance as follows: He lives in the same apartment house in Fayetteville in which appellant lives. Appellant lives across the hall from him. On the evening of 14 August 1964 he was at home all evening, and heard no noises at all. Appellant's wife and the other girl came in about 11:30 p.m., because he was awakened when they slammed the front door. The door of his bedroom was open, but the screen was latched. He does not know whether the doors in appellant's apartment were closed or not. Mrs. Emma Byrd lives with her husband in the same apartment house in which appellant lives. The door of the apartment in

which she lives was open. Mrs. Gasque and the other girl came in about 11:30 p.m. She heard no crying or hollering or any unusual noises in the Gasque apartment. It was quiet all evening. One can hear anything he wants to hear from one apartment to the other.

Appellant did not testify in his own behalf.

The appellant's assignment of error No. 4 reads as follows: "The Court erred in permitting evidence of a prior independent occurrence. DEFENDANT'S EXCEPTIONS Nos. 4 and 5 (R. p. 4)."

What is said in *Kleinfeldt v. Shoney's, Inc.*, 257 N.C. 791, 127 S.E. 2d 573, is in point here:

> "This assignment of error is not sufficient in form to present the alleged errors relied on, for the reason that we have repeatedly held that Rules 19(3) and 21, Rules of Practice in the Supreme Court, 254 N.C. 783 *et seq.*, require an assignment of error to state clearly and intelligently what question is intended to be presented without the necessity of the Court going beyond the assignment of error itself 'on a voyage of discovery' through the record to find the asserted error and the precise question involved. These rules are mandatory, and will be enforced."

In support of this statement the opinion cites voluminous authority. "It is not sufficient to merely refer to the page for the asserted error." *Conrad v. Conrad*, 252 N.C. 412, 113 S.E. 2d 912. Nevertheless, we have gone on a "voyage of discovery" through the record and this appears on page 4 of the record:

> "Q. Had the defendant ever made any advances to you before this, August 14, 1964? OBJECTION. OVERRULED. DEFENDANT'S EXCEPTION No. 4.
>
> "This happened to me one time before August 14, 1964. Me and my Mama and my two sisters and Daddy were going fishing. Daddy told Mama she could get the two sisters ready, because they were little, and he would take me on up with him. We got the poles for fishing and when we got up there Daddy just started messing with me and all. He was trying to mess with me and my private, and I wouldn't let him, but I didn't think anything of it. I was seven at the time. DEFENDANT'S EXCEPTION No. 5.
>
> "I was examined by Dr. Webb in Raleigh after August 14, 1964. I made a statement to him about what had happened."

In *S. v. Browder*, 252 N.C. 35, 112 S.E. 2d 728, the Court said:

> "In most jurisdictions it is held or recognized that in prosecutions for statutory rape, or rape of a female under the age

of consent, or otherwise unable to consent, evidence is admissible which tends to show prior offenses of the same kind committed by the defendant with the prosecuting witness, provided they are not too remote in point of time, such evidence being admitted in corroboration of the offenses charged, or to prove identity, and not to prove a separate offense. 44 Am. Jur., Rape, Sec. 80; Wharton's Criminal Evidence, 12th Ed., Vol. I, p. 547; 22 C.J.S., Criminal Law, p. 1165; Annotation, 167 A.L.R. p. 574, *et seq.;* Underhill's Criminal Evidence, 5th Ed., Vol. I, Sec. 211; Wigmore on Evidence, 3rd Ed., Vol. II, Sec. 398. The above works cite in support of their statements a multitude of cases, and the Annotation in 167 A.L.R., and Wharton's Criminal Evidence cite cases from 36 states including our case of *S. v. Parish, supra* [104 N.C. 679, 10 S.E. 457], which recognizes the rule, and the District of Columbia."

In *S. v. Parish,* 104 N.C. 679, 10 S.E. 457, the defendant was convicted of the common law offense of rape of his eleven-year-old daughter. At that time the age limitation for statutory rape of a female child was under the age of ten years. Code of N. C. 1883, Vol. I, Sec. 1101. The age limitation was changed to under the age of twelve years during the 1917 Session of the General Assembly. Public Laws of North Carolina, Session 1917, Chapter 29. Over defendant's objection, his daughter was permitted to testify that at various other times and places her father had violated her person. This Court said: "It would be unreasonable to deny to the State the right to show repeated acts, and that all were committed against her will in order to explain her conduct on the particular occasion to which the attention of the jury is directed, and to throw light upon the question whether she yielded willingly to his embraces. . . . The rule is, that testimony as to other similar offenses may be admissible as evidence to establish a particular charge, where the intent is of the essence of the offense, and such testimony tends to show the intent or guilty knowledge."

In *S. v. Leak,* 156 N.C. 643, 72 S.E. 567, the indictment charged defendant with assaulting a twelve-year-old girl with intent to commit rape. This Court said:

"It was competent for the State to prove that the defendant placed his hands on the prosecutrix at another time on the day of the assault, as evidence of another assault of which the defendant could have been convicted under the indictment, and as tending to prove the *animus* and intent of the defendant."

*S. v. Broadway,* 157 N.C. 598, 72 S.E. 987, was a prosecution for incest. The record on file in the office of the Clerk of the Supreme

Court shows that defendant was charged with committing the crime of incest with his daughter of the whole blood, Mary Broadway. The record shows that the court, over defendant's objection, permitted Mary Broadway to testify that "within the past three or four years he (her father) had to do with me every time he got a chance," to testify as to the first time it occurred, and the last time it occurred, and to testify as to other acts of intercourse with her father. The record also shows that the court, over defendant's objection, permitted Mary C. Morgan, grandmother of Mary Broadway, to testify Mary Broadway told her the first time her father had intercourse with her, and that thereafter he had to do with her every time he got a chance, and permitted her brother, George Broadway, to testify that he saw Mary Broadway "come from a room crying, saying her father had had to do with her." In respect to this evidence, which is not in the decision, but is in the record on file in the office of the Clerk of the Supreme Court, this Court said:

> "The exception to proof of other acts of the same nature cannot be sustained. They are competent in corroboration, (citing authority), as was also evidence of cruel treatment of the daughter offered to show compulsion, 22 Cyc. 53. The evidence of similar statements made by the witness before the trial was also competent as corroborative evidence, and this may be shown by the witness himself."

Appellant in his brief relies upon *S. v. Gammons*, 258 N.C. 522, 128 S.E. 2d 860. That case is not in point because the factual situation is entirely different. In that case the original record on file in the office of the Clerk of the Supreme Court shows that defendant was tried on an indictment charging him with an assault on Ruth Mills with intent to commit rape. A new trial on appeal in this Court was granted because the court permitted, over the objection of defendant, the testimony of Caroleta Garner, a witness for the State, to the effect that defendant had sexual intercourse with her by fraud.

Appellant's assignment of error No. 4 is overruled.

Appellant's assignment of error No. 5 reads as follows: "The Court erred in allowing hearsay evidence of a prior, independent occurrence. DEFENDANT'S EXCEPTIONS Nos. 6, 7, 8 and 9 (R. pp. 7, 8, 9.)"

Again going on a "voyage of discovery" through the record we discover this in the testimony of Ida M. Byrd, grandmother of Anna Jean Gasque:

> "On the 31st of August, Anna Jean Gasque told me that right after she came out of the foster home that they were go-

ing fishing and that her father had told her that she was to go with him to the fishing place while her mother got the two children ready. When they got to the river bank, he asked her to take off her panties and he tried to love her. This happened four years ago last June. DEFENDANT'S EXCEPTION No. 6.

"Anna Jean Gasque also said that he had done that in Fayetteville on the 14th of August. She just said that he took her on the bed and had intercourse with her. She did not use the word intercourse but said that he used his 'ding dong.'"

The record does not show any objection to this testimony, but only an exception. This is said in 1 Strong, N. C. Index 2d, Appeal and Error, § 1: "The jurisdiction of the Supreme Court on appeal is limited to questions of law or legal inference, which, ordinarily, must be presented by objections duly entered and exceptions duly taken to the rulings of the lower court." This is said in *Conrad v. Conrad, supra:* "Error can only be asserted by an exception taken at an appropriate time and in an appropriate manner. Errors based on rulings made during the trial must ordinarily be called to the attention of the court by an objection taken when the ruling is made. G.S. 1-206."

The testimony of Ida M. Byrd is challenged only by an exception. It is in corroboration substantially of what this little girl told her grandmother. Appellant's assignment of error to the testimony of the grandmother, Ida M. Byrd, is overruled.

Going on another "voyage of discovery" through the record we find this set forth in the testimony of Barbara C. Byrd, an aunt of Anna Jean Gasque:

"Q. What, if any, statement did she make concerning Willie Lee Gasque? OBJECTION.

COURT: This is limited for the purpose of corroboration, if in fact you, the jury, find that it does corroborate Anna Jean Gasque, and for no other purpose. All right.

"She told us that her father had been molesting her. We asked what she meant and she said that he had been putting his private in her private and that he had been doing so quite frequently. She said this had been happening since the time she came from the foster home four years ago and that it had happened the last time in Fayetteville, before we went and got her on the 17th of August. DEFENDANT'S EXCEPTION No. 7.

"CROSS EXAMINATION

"She told me that her stepfather had intercourse with her and that it had happened many times. She said it first started after she came back from the foster home four years before.

She said it had been frequent since that time. DEFENDANT'S EXCEPTION No. 8.

"She told me that the last time that it happened was on the Friday before we came to town and picked her up at 117 B Street. She said he put his 'ding dong' in her and that he had used her about once a week when the children were asleep. DEFENDANT'S EXCEPTION No. 9."

On the cross-examination of Barbara C. Byrd the record shows no objection. These exceptions are overruled upon authority of what we have said above in respect to no objection being taken upon which the exception is based. Even conceding technical error in the testimony of Barbara C. Byrd brought out on direct examination over the objection of appellant, yet it is our opinion, and we so hold, considering all the facts of this case, and particularly the youthful age of the victim, the specific testimony of Dr. Alexander Webb, Jr., and the quoted testimony of her grandmother, that the admission of the challenged testimony of Barbara C. Byrd was not so prejudicial as to warrant a new trial, and that it is likely a different result would not have been reached if this challenged evidence had been excluded. In *S. v. Temple,* 269 N.C. 57, 152 S.E. 2d 206, the Court said:

"It is thoroughly established in our decisions that the admission of evidence which is not prejudicial to a defendant does not entitle him to a new trial. To warrant a new trial it should be made to appear by defendant that the admission of the evidence complained of was material and prejudicial to defendant's rights and that a different result would have likely ensued if the evidence had been excluded. *S. v. King,* 225 N.C. 236, 34 S.E. 2d 3; 1 Strong's N. C. Index, Appeal and Error, §§ 40 and 41."

Appellant states in his brief that he specifically abandons his assignments of error Nos. 1 and 8.

In support of his assignment of error No. 6, the appellant states: "We have no authority to support this contention." The other assignments of error relate to the charge. We have carefully read the charge in its entirety, and we find no prejudicial error.

The evidence offered by the State is amply sufficient to support the verdict. In the trial below we find

No error.

BOBBITT, J., dissenting. Although the court-appointed counsel who appeared for defendant at trial did not note objections and exceptions in the manner required by our Rules, the testimony of

Barbara C. Byrd, the aunt of the prosecutrix, is so palpably incompetent and, in my opinion, so devastatingly prejudicial, as to necessitate a new trial. Her testimony as to what the prosecutrix told her as to incidents between the prosecutrix and defendant prior to August 14, 1964, does not corroborate the prosecutrix but is in direct conflict with her testimony. Moreover, the impact of this incompetent and prejudicial testimony is emphasized by the court's review thereof in the charge to the jury. Conceding there is sufficient competent evidence to support a conviction of defendant if a new trial is awarded, our function is to make sure that he has a trial free from prejudicial error.

While I vote for a new trial on the ground stated above, I wish to say that I am in full accord with that portion of the Court's opinion to the effect that "under the specific facts here appellant's waiving of a preliminary hearing was not such a 'critical stage' of the proceeding as to require the presence of counsel," and that the failure to supply counsel for such preliminary hearing was not "a deprivation of any constitutional right of appellant." I approve fully the Court's excellent review of decided cases and the conclusions reached as to this feature of the case.

HIGGINS and SHARP, JJ., join in dissenting opinion.