Jacob VANCE, Jr., Appellant,

v.

**STATE OF NORTH CAROLINA,**
Appellee.

No. 13357.

United States Court of Appeals, Fourth Circuit.

Argued May 8, 1970.

Decided Oct. 5, 1970.

**986**

Robert L. Harrell, Asheville, N. C. (Court-assigned) for appellant.

Prof. Ralph S. Spritzer, Philadelphia, Pa. (Prof. Paul Bender, Washington, D. C., and Prof. James A. Strazzella, Philadelphia, Pa., on brief) amici curiae.

Jacob L. Safron, Raleigh, N. C., Staff Atty. (Robert Morgan, Atty. Gen., on brief), for appellee.

Before BRYAN and CRAVEN, Circuit Judges, and RUSSELL, District Judge.

CRAVEN, Circuit Judge:

Jacob Vance appeals from an order of the district court dismissing his petition for a writ of habeas corpus. Vance contends that North Carolina violated his constitutional rights in three respects during his criminal prosecution. First, he claims that his incourt identification by a prosecution witness should not have been permitted because a previous station house confrontation with the witness was held in the absence of counsel and was unduly prejudicial. Second, he contends that North Carolina's failure to provide him an attorney at a preliminary hearing violated his sixth amendment right to the assistance of counsel. Third, he asserts that certain evidence obtained incident to his arrest under an invalid arrest warrant should have been excluded from his trial. On points one and three we affirm the district court. On point two—denial of the right to counsel—we reverse and remand for re-consideration in the light of Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

I.

On July 3, 1965, North Carolina paroled Jacob Vance after he had served three years of an armed robbery sentence. Several months later, on October 14, 1965, Vance absconded from parole supervision. The North Carolina Board of Paroles revoked his parole and issued a warrant for his arrest. This concededly valid warrant was still outstanding about two months later, when Vance was again arrested for armed robbery.

The facts surrounding his second arrest and conviction are as follows. On the afternoon of January 20, 1966, two men entered a general store in Mecklenburg County, drew revolvers, and demanded money from the store clerk, O. D. Ferrell. Ferrell turned over approximately $135.00 to the gunmen, and they fled through the front door. Ferrell scrutinized the pair closely during the hold up and later furnished their descriptions to the police. He noted that one of the men wore coveralls during the robbery.

A customer approaching the store saw the two men emerge and proceed afoot along the highway. He stopped a passing vehicle and requested the occupants to follow the pair. They followed at a safe distance until they observed the men enter a parked car occupied by two other persons. They noted the license number of the car and passed it on to the police.

The police ascertained the identity of the car's owner, but when they questioned him he disclaimed any part in the holdup, explaining that he lent his car to Jacob Vance on the day of the crime. After viewing the car owner, Ferrell confirmed that he was not one of the two men who robbed the store.

On the strength of the above information the police obtained an arrest warrant for Jacob Vance. The warrant was dated January 21, 1966, and was

signed by a desk officer on the Mecklenburg police force. The defendant concedes there was probable cause to arrest him. The arrest warrant was, however, invalid, since North Carolina and federal law require that an application for a warrant be considered by a neutral and detached magistrate rather than by a policeman's fellow officers. See Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); State v. Matthews, 270 N.C. 35, 153 S.E.2d 791 (1967); State v. McGowan, 243 N.C. 431, 90 S.E.2d 703 (1956).

Armed with this invalid warrant, Mecklenburg and Charlotte police went to Vance's rooming house and arrested him. During the arrest the officers saw a pair of coveralls lying in plain view within an open closet. The police seized the coveralls, and Vance later wore them while Ferrell viewed him in a one on one line up. Ferrell identified Vance in the line up and at trial as one of the men who robbed him. At trial he also identified the coveralls, which the state introduced against Vance.

On March 17, 1966, a jury convicted Vance of armed robbery, and the trial judge sentenced him to serve 28 to 30 years. Thereafter he applied for post-conviction relief in the Superior Court of Mecklenburg County, but that court denied his petition. His subsequent applications to the North Carolina Court of Appeals for writs of mandamus and certiorari were also unsuccessful. His last effort in the state courts was a petition for a writ of habeas corpus, which was denied on May 24, 1968. Having exhausted his state remedies, Vance applied to the United States District Court for relief.

## II.

■ ■ Vance first asserts that the one on one line up violated his sixth and fourteenth amendment rights because it was conducted in the absence of counsel and was so unduly suggestive as to taint Ferrell's subsequent courtroom identification. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), which established the right to counsel at line ups, does not apply to confrontations before June 12, 1967. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Since the confrontation of which Vance complains took place in 1966, he is not entitled to relief unless, on the totality of the circumstances, the line up was so unnecessarily suggestive and conducive to irreparable mistaken identification that it deprived him of due process. Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

■ At trial Ferrell testified that he observed both Vance and the other gunman closely while they were in the store. He also stated that he stood only three and a half feet from Vance during the robbery. When the state introduced the coveralls seized incident to Vance's arrest, Ferrell said that he could not be certain they were the ones he had observed during the holdup, although he testified that they were a "similar pair." Defense counsel pressed this point on cross examination, and Ferrell responded that he had not paid a great deal of attention to the robber's garments because he was staring down the muzzles of two guns. Later on cross examination he stated: "I will tell you, if you look down a gun barrel like I did * * *, you don't forget the faces." When defense counsel specifically inquired whether Vance was wearing blue coveralls at the line up, Ferrell replied: "I believe he was, yes, sir." Throughout his testimony Ferrell was unwavering in his recognition of both defendants' faces.

We think the trial judge could reasonably infer that Ferrell's courtroom identification was based on his observation of Vance's facial characteristics during the robbery, and not upon his memory of Vance wearing the seized coveralls at

the line up. Ferrell's testimony was somewhat vague about how the gunmen were attired, but he was emphatic in identifying the two men as the robbers from his recognition of their visages. Compare United States v. Levi, 405 F.2d 380 (4th Cir. 1968); United States v. Quarles, 387 F.2d 551 (4th Cir. 1967). Because the record supports the conclusion that Ferrell's courtroom identification of Vance was based on the events of the robbery rather than those of the subsequent line up, we affirm the district court's dismissal of the petition on this point.

## III.

Vance next argues that the state's failure to appoint an attorney to assist him at his preliminary hearing was a violation of his sixth amendment right to counsel. In several memorandum decisions we have rejected similar contentions arising in habeas cases. It has been thought well settled that the type of preliminary hearing permitted by the laws of North Carolina was not a "critical stage" in the criminal prosecution and that an accused is not entitled by the sixth amendment to have counsel appointed for him for the purpose of appearing at a preliminary hearing. Rambo v. Peyton, 380 F.2d 363 (4th Cir. 1967); Vess v. Peyton, 352 F.2d 325 (4th Cir. 1965); DeToro v. Pepersack, 332 F.2d 341 (4th Cir. 1964); Carroll v. Turner, 262 F.Supp. 486 (E.D.N.C. 1966); Gasque v. State, 271 N.C. 323, 156 S.E.2d 740 (1967), cert. denied, 390 U.S. 1030, 88 S.Ct. 1423, 20 L.Ed.2d 288 (1968); State v. Pulley, 5 N.C.App. 285, 168 S.E.2d 62 (1969); Chapman v. State, 4 N.C.App. 438, 166 S.E.2d 873 365, 161 S.E.2d 650 (1968).

But for Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), decided on June 22, 1970, we would have dismissed this contention as being without merit. In *Coleman* for the first time the sixth amendment right to counsel has been unequivocally extended to a preliminary hearing. Cf. Hamilton v. Alabama, 368 U.S. 52, 54, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Although the sole purposes of the preliminary hearing in Alabama, as declared by its highest court, are to determine (a) whether there is sufficient evidence against the accused to warrant presenting his case to the the grand jury and (b) to fix bail if the offense is bailable, the Supreme Court has noticed that other important results may flow from the conduct of the hearing. This is so even though Alabama law prohibits the state's use at trial of anything occurring at the preliminary hearing in the absence of defense counsel.

The determination whether the hearing is a "critical stage" requiring the provision of counsel depends * * * upon an analysis "whether potential substantial prejudice to defendant's rights inheres in the * * * confrontation and the ability of counsel to help avoid that prejudice."

399 U.S. 9, 90 S.Ct. 2003 (1970).

The court held the Alabama preliminary hearing to be a "critical stage" of the state's criminal process for these reasons:

1. A lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the state's case.

2. Interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for cross-examination at the trial.

3. Testimony favorable to the accused of a witness who does not appear at the trial may be preserved.

4. A lawyer may more "effectively discover the case" that the state has against his client and thereby become better prepared to rebutt it.

5. A lawyer may persuade the magistrate to grant an early psychiatric examination or bail.

In North Carolina the preliminary hearing has been aptly described as "a course of procedure whereby a possi-

ble abuse of power may be prevented." Carroll v. Turner, 262 F.Supp. 486, 490 (E.D.N.C.1966). As in Alabama, the purpose of the hearing is to determine whether there has been an offense committed, and, if so, whether there is probable cause to believe that the accused committed it. See N.C.Gen.Stat. §§ 15-94, 15-95 (Replacement Vol. 1965). The accused party may waive the hearing, even in the absence of counsel, State v. Cason, 267 N.C. 316, 148 S.E.2d 137 (1966), cert. denied, 385 U.S. 1019, 87 S.Ct. 748, 17 L.Ed.2d 556 (1967); N.C.Gen.Stat. § 15-85 (Replacement Vol. 1965), as amended (Supp.1969), and the state may also dispense with the proceeding, since it is not essential to the finding of an indictment. Gasque v. State, 271 N.C. 323, 156 S.E.2d 740 (1967), cert. denied, 390 U.S. 1030, 88 S.Ct. 1423, 20 L.Ed.2d 288 (1968); State v. Bentley, 1 N.C.App. 365, 161 S. E.2d 650 (1968).

We do not believe that the assistance of counsel is less necessary at the North Carolina preliminary hearing than at the Alabama hearing described in *Coleman*. The testimony of witnesses at the North Carolina hearing is subject to cross-examination by the accused or by his lawyer, should he have counsel. N. C.Gen.Stat. § 15-88 (Replacement Vol. 1965). Moreover, in North Carolina the accused may himself be examined in relation to the charged offense, although not under oath. N.C.Gen.Stat. § 15-89 (Replacement Vol. 1965). The North Carolina statutory scheme permits the accused to introduce his own witnesses, N.C.Gen.Stat. § 15-92 (Replacement Vol. 1965), and both prosecution and defense witnesses are prohibited from being present while other witnesses are examined. N.C.Gen.Stat. § 15-90 (Replacement Vol. 1965). Furthermore, North Carolina requires the magistrate to bind over all witnesses who appear against the defendant to testify at trial, N.C. Gen.Stat. § 15-96 (Replacement Vol. 1965), and in appropriate circumstances he may require the witnesses to give security to insure their presence, N.C.

Gen.Stat. § 15-97 (Replacement Vol. 1965). In North Carolina examinations taken at the hearing may also be used before the grand jury or, if the accused was present and had an opportunity to examine the witnesses, at trial. N.C. Gen.Stat. § 15-100 (Replacement Vol. 1965).

As in Alabama, the safeguards of the North Carolina preliminary hearing may be neglected or mismanaged unless counsel is appointed to assist an indigent accused. In the first place, a defendant may be unaware that many of the procedural protections described above exist. However, even if he is aware of the rights afforded him, such as the right to cross examine witnesses, his skill is not that of a trained advocate. He is unacquainted with the rules of evidence and courtroom procedure; consequently, he cannot be expected to preserve testimony that could be favorable to him at trial, flaws in the witnesses' testimony that weaken the state's case, or testimonial defects that may be valuable for purposes of future impeachment. He is also ill equipped without counsel to discover the case the state has against him. Finally, in North Carolina, as in Alabama, the accused needs counsel in order to effectively argue for benefits such as bail, See N.C.Gen.Stat. § 15-95 (Replacement Vol. 1965), or early psychiatric examinations.

■ We see no constitutional difference between the Alabama hearing discussed in *Coleman* and the North Carolina preliminary hearing, since the assistance of counsel is necessary at both proceedings to safeguard the accused's trial defenses. Consequently, we hold that the North Carolina hearing is a critical stage in a criminal proceeding at which the assistance of counsel for an indigent accused is required. We reverse and remand to the district court for a consideration of whether the absence of counsel at Vance's preliminary hearing prejudiced him, or whether the denial was harmless error under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). See Cole-

man v. Alabama, 399 U.S. at 9, 90 S.Ct. 1999 (1970). On remand the district court should, of course, also consider whether *Coleman* is to be applied retroactively. Compare Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) with Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968) and Kemplen v. Maryland, 428 F.2d 169 (4th Cir. 1970).

### IV.

Vance also contends that introduction of the coveralls seized incident to his arrest was error, since the police arrested him pursuant to an invalid arrest warrant. He urges us to adopt the position that an arrest inside a dwelling without a warrant, or pursuant to an invalid warrant, is *per se* unreasonable under the fourth amendment unless there are "exigent circumstances" justifying the police in bypassing a magistrate, citing especially Dorman v. United States, (D.C. Cir. 1970).

In their efforts to secure the right of the people against unreasonable searches, the courts have never gone so far as to flatly bar prosecution. This sanction has been thought too extreme. Thus it is still the law that one whose home has been invaded, even in the nighttime, without a warrant, and without probable cause, may nevertheless be subsequently prosecuted, convicted, and sentenced, provided only that no advantage to the prosecution results from the unlawful search and seizure. In criminal practice it does not matter how unconstitutional the police behave, so long as they are not permitted to benefit from their lawless conduct in court. Nor is every theoretical advantage enough to trigger court devised criminal trial sanctions. Obviously Vance could not have been tried and sentenced if he had not been found and arrested. But without articulation the courts have seemed to assume that sooner or later one arrested unlawfully would have been lawfully apprehended and brought to trial. The advantage to the state has been thought too speculative and subsequent barring of all prosecution too extreme to support such a sanction. Some advantage other than mere apprehension of the defendant must accrue to invoke the exclusionary rules. In Vance's case the advantage was the seizure of the coveralls and their introduction into evidence at the trial. Vance made no statement, admission, or confession that was used at his trial. The only legally noticeable result of the questioned arrest and seizure, therefore, was the obtaining and use of this item of evidence.

In *Dorman* the District of Columbia Court of Appeals said that the fourth amendment requires scrutiny by a judicial officer before the police may enter a dwelling to effect an arrest, unless "circumstances" justify a warrantless entry. Without excluding the possibility of other "exceptions" the court went on to articulate some of the elements relevant in determining whether "exigent circumstances" exist in a particular case: (1) whether a serious offense, particularly a crime of violence, is involved; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether strong reason exists to believe the suspect is in the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is forcible or peaceful; and (7) whether the entry is at night. When the court applied these considerations to the facts of *Dorman,* it concluded that the police were justified in entering to arrest the defendant without a warrant.

The "exigent circumstances" test is not new. The police have long been permitted to act without obtaining a magistrate's approval when the "exigencies of the situation [have] made that course imperative." Warden, Md. Pen. v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948).

For several reasons, we think Vance's arrest passes the "exigent cir-

cumstances" test. First, armed robbery is a grave offense, involving an extreme danger of violence. Second, the police had reasonable cause to believe that Vance was armed, since he used a gun the day before. Third, the existence of probable cause is so clear that Vance does not contest it. Fourth, Vance was at large some three months after the issuance of the parole violator's warrant, and this fact alone supports an inference that he was likely to escape if not swiftly apprehended. Fifth, the police entry was apparently peaceful and was not resisted.

Only one of the *Dorman* indicia is missing: the record does not indicate that there was any particular reason for believing that Vance was on the premises entered. But this is balanced by the time of entry—the arrest occurred early in the afternoon. With regard to this factor, Judge Leventhal in *Dorman* commented:

> [T]he fact that an entry is made at night raises particular concern over its reasonableness, as indicated in Justice Harland's opinion in Jones v. United States, [357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)], and may elevate the degree of probable *cause required,* both as implicating the suspect, *and as showing that he is in the place entered.* (Emphasis added)[1]

It must be conceded that the state's argument of "exigent circumstances" is weakened by the fact that the police officers actually took the time to seek and obtain a warrant, albeit a defective one. However, it would be ironic to apply an exclusionary rule because the police behave with more caution than required.

 In addition to the "exigent circumstances" test, discussed previously, we think there are other factors, pecu-

liar to this case and not likely to recur, tending to support the conclusion of the district judge that the seized evidence was properly admitted. Although the constitutionality of an arrest must always be objectively determined, it is not irrelevant to consider how the conduct of the police may have appeared to them and to the one arrested. For how it seemed to them may tend to affect behavior, and it is lawless behavior that is the concern of the fourth amendment.

Vance himself knew, of course, that he had previously been convicted of armed robbery, had violated the conditions of his parole, and was subject to arrest as a parole violator. He had every reason to expect the knock on the door. It is unlikely that he experienced any sense of outrage or indignation— emotions that sometimes account for resisting arrest and resultant violence.

The police who arrested Vance obviously must have thought they were acting reasonably. Whether or not the particular police officers making the arrest knew of the parole violator warrant that was outstanding, they certainly knew that they had obtained and possessed a colorable warrant based upon probable cause and doubtless were unaware it was deficient under the law. Thinking that he was acting lawfully and in obedience to the Constitution would seem to be a better mental attitude for a policeman than that of a lawless invader.

Although subjective factors such as these cannot be controlling, we think they mitigate the failure of the police to have obtained a valid warrant from a magistrate and partially justify the failure of the trial judge to apply a prophylactic exclusionary rule.

Affirmed in part and reversed and remanded in part.

---

1. The special concern for nighttime entry is reflected in Rule 41(c) of the Federal Rules of Criminal Procedure which authorizes searches for property at night only if the affidavits are "positive" that the property is in the house or on the person named.