398 A.2d 707

**COMMONWEALTH of Pennsylvania**

v.

**William FLADGER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 12, 1977.

Decided March 2, 1979.

Robert R. Redmond, Philadelphia, for appellant.

F. Emmett Fitzpatrick, District Attorney, and with him Michael R. Stiles, Assistant District Attorney, Chief, Appeals Div., Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

**CERCONE, Judge:**

Appellant was convicted after a non-jury trial of involuntary deviate sexual intercourse,[1] indecent assault,[2] recklessly endangering another person,[3] terroristic threats,[4] and possession of an instrument of crime generally.[5] This direct appeal followed the denial of post-trial motions and the imposition of sentence.

■ Appellant contends that a gun retrieved from his apartment was the result of an unlawful search and seizure and, therefore, should not have been admitted into evidence at trial.[6] The events relevant to this issue are as follows. On April 1, 1976, the complainant was climbing the stairs to her fourth floor apartment when she came upon appellant, the apartment building superintendent. The complainant requested appellant to repair the sink in her bathroom. Shortly thereafter, appellant arrived at complainant's apartment and examined the sink. As he was leaving the bathroom appellant placed his arms around the complainant, who objected and asked him to stop. When they entered the living room of complainant's apartment, appellant's advances grew more threatening. When this conduct was rejected, appellant placed a gun at the complainant's head and forced her to accompany him to his basement apartment in the same building. At gun point, appellant forced complainant to perform fellatio upon him before permitting her

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3123.

2. The Crimes Code, supra, 18 Pa.C.S. § 3126.

3. The Crimes Code, supra, 18 Pa.C.S. § 2705.

4. The Crimes Code, supra, 18 Pa.C.S. § 2706.

5. The Crimes Code, supra, 18 Pa.C.S. § 907.

6. Appellant also argues that (1) it was error to permit the Commonwealth to amend the Bills of Information regarding the date of the offenses at the outset of trial; (2) the complainant's testimony was so impaired by prior inconsistent statements that her credibility was fatally destroyed; and (3) the Commonwealth failed to establish the chain of custody of the aforementioned gun. We have examined these contentions and find them devoid of merit.

to leave. After the complainant returned to her apartment and composed herself, she contacted the police and reported the incident.[7]

Approximately two hours after the complainant reported the incident and gave a statement to the police, detectives, without a warrant, went to appellant's apartment to arrest him. Although the detectives could hear loud music coming from inside appellant's apartment, no one responded to their announcements or knocks on the door. Accordingly they forced the door open and entered the apartment in search of appellant. In the course of their search for appellant, who proved not to be on the premises, the detectives observed a starter pistol lying in plain view on appellant's bed.[8] It is this gun which appellant contends should have been suppressed as the fruit of an unlawful search and seizure.

"It is well established that a police officer is authorized to arrest without a warrant where he has probable cause to believe that a felony has been committed and that the person to be arrested is the felon. *Draper v. United States,* 358 U.S. 307, 311, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Commonwealth v. Bosurgi,* 411 Pa. 56, 66, 190 A.2d 304, 310 (1963)." *Commonwealth v. Jackson,* 450 Pa. 113, 117, 299 A.2d 213, 214 (1973); *Carroll v. United States,* 267 U.S. 132, 156, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Indeed, Rule 101(3) of the Pennsylvania Rules of Criminal Procedure specifically empowers law enforcement officials to effectuate warrantless arrests where there is probable cause to believe the suspect has committed a felony. See also ALI, A Model Code of Pre-arraignment Procedure, § 120.1 (1975). The question posed by this appeal, however, is under what circumstances may the police enter private premises to make a warrantless arrest of a suspected felon.

7. The following day, appellant stood outside the victim's apartment door and threatened her because she had reported the incident.

8. Appellant was eventually apprehended on April 10, 1976, when a uniformed officer—responding to the complainant's alert that appellant was in the building—arrested him as he attempted to climb out of a second floor window.

More specifically, whether in addition to probable cause, must the police also be confronted with exigent circumstances before they can enter a suspect's home to effect a warrantless arrest?

In *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) and *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) the Supreme Court concluded that the Fourth Amendment does not bar the police from making a warrantless arrest in a public place provided there is probable cause. The Court, however, specifically reserved judgment on the question of whether and under what circumstances the police may enter a suspect's dwelling to effect a warrantless arrest. *United States v. Watson,* supra, 423 U.S. at 418, n. 6, 96 S.Ct. 820. Nevertheless, in view of the similarity between the issues, a brief review of *Watson* and *Santana* is in order.

A plurality of the Court in *Watson* stated that the traditional inquiry in cases involving the legality of warrantless arrests has been "not whether there was a warrant or whether there was time to get one, but whether there was probable cause for the arrest." *Id.* at 417, 96 S.Ct. at 824. The Court further observed that "[j]ust last Term, while recognizing that maximum protection of individual rights could be assured by requiring a magistrate's review of the factual justification prior to any arrest, we stated that 'such a requirement would constitute an intolerable handicap for legitimate law enforcement' and noted that the Court 'has never invalidated an arrest supported by probable cause solely because the officers failed to secure a warrant.'" *Id.* at 417–418, 96 S.Ct. at 825 (quoting *Gerstein v. Pugh,* 420 U.S. 103, 113, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)). Mr. Justice White, writing for the plurality, then reviewed the historical origins of the felony arrest doctrine and noted that both the common law and the majority of state statutes permit warrantless felony arrests solely on probable cause. Justice White further wrote:

"The balance struck by the common law in generally authorizing felony arrests on probable cause, but without

a warrant, has survived substantially intact. It appears in almost all of the States in the form of express statutory authorization. In 1963, the American Law Institute undertook the task of formulating a model statute governing police powers and practice in criminal law enforcement and related aspects of pretrial procedure. In 1975, after years of discussion, A Model Code of Pre-arraignment Procedure was proposed. Among its provisions was § 120.1 which authorizes an officer to take a person into custody if the officer has reasonable cause to believe that the person to be arrested has committed a felony, or has committed a misdemeanor or petty misdemeanor in his presence.[11] The commentary to this section said: 'The Code thus adopts the traditional and almost universal standard for arrest without a warrant.'[12]

[11] Section 120.1 of the Model Code provides, in pertinent part:

'(1) *Authority to Arrest Without a Warrant.* A law enforcement officer may arrest a person without a warrant if the officer has reasonable cause to believe that such person has committed

(a) a felony;

(b) a misdemeanor, and the officer has reasonable cause to believe that such person

(i) will not be apprehended unless immediately arrested; or

(ii) may cause injury to himself or others or damage to property unless immediately arrested; or

(c) a misdemeanor or petty misdemeanor in the officer's presence.'

[12] *Id.,* at 289 (footnote omitted). The commentary goes on to say with respect to § 120.1:

This Section does not require an officer to arrest under a warrant even if a reasonable opportunity to obtain a warrant exists. As to arrests on the street such a requirement would be entirely novel. Moreover the need for it is not urgent, and the subsequent inquiry such a requirement would authorize would be indeterminate and difficult. *Id.,* at 303 (footnotes omitted).

As the commentary notes, id., at 289 n. 1, a statute in the State of Georgia is more restrictive of the arrest power than the general standard. Ga.Code Ann. § 27–207(a) (Supp.1975). See also Colo. Rev.Stat.Ann. § 16–3–102 (1973), which provides that an arrest warrant should be obtained 'when practicable,' and Mont.Rev.Codes Ann. § 95–608(d) (1969) which authorizes a warrantless arrest if 'existing circumstances require' it. A North Carolina statute, N.C. Gen.Stat. § 15–41 (1965), similar to the Georgia statute, was replaced in 1975 by a provision permitting warrantless felony arrests on probable cause. N.C.Gen.Stat. § 15A–401(b)(2) (1975)."

*United States v. Watson,* supra, 423 U.S. at 421–22, 96 S.Ct. at 827. A majority of the Court in *Watson* then held that provided there is probable cause, a person may be arrested in public notwithstanding the failure to first obtain a warrant.

To be sure, the Court's holding in *Watson* was confined to warrantless public arrests and did not explicitly address the question here reviewed. Nonetheless, it would appear that the analysis and rationale employed in *Watson* is equally applicable to the instant case and compels the same conclusion. Indeed, Mr. Justice Marshall, who vigorously dissented in *Watson,* was constrained to observe:

> "First the opinion all but answers the question raised in *Coolidge v. New Hampshire,* 403 U.S. [443], at 480–481, 91 S.Ct. [2022], at 2045 [29 L.Ed.2d 564] . . . namely, 'whether and under what circumstances an officer may enter a suspect's home to make a warrantless arrest.' *Gerstein v. Pugh,* . . . . Admittedly, my Brothers STEWART and POWELL do not read the opinion to resolve that issue and indeed, the Court purports to leave it open, *Ante,* at 418 n. 6, [96 S.Ct. 820] at 825. But the mode of analysis utilized here—reliance on the common law and federal and state statutes—provides a ready answer, as indeed the Court hints by its extended discussion of § 120.6 of the ALI Model Code of Pre-arraignment Procedure and its relevant commentary. *Ante,* at 418 n. 6, [96 S.Ct. 820] at 825. . . . Unless the approach of this opinion is to be fundamentally rejected, it will be difficult, if not impossible, to follow these sources to any but one conclusion—that entry to effect a warrantless arrest is permissible."

*United States v. Watson,* supra, 453–54, 96 S.Ct. 842 (Marshall, J., dissenting).

In *United States v. Santana,* supra, the police had probable cause to believe that the defendant, who was standing in the doorway of her dwelling, was in possession of narcotics. When the police approached and identified themselves, the defendant fled into the vestibule of her residence where she was arrested without a warrant. In approving the warrant-

less arrest the Court, with Mr. Justice Rehnquist, writing for the court, concluded "that a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper under *Watson* by the expedient of escaping to a private place." *United States v. Santana,* supra, 427 U.S. at 43, 96 S.Ct. at 2410. Thus the Court permitted the police to enter private premises for the purpose of effecting a warrantless arrest since the attempt to arrest was begun in a supposed public area.

Additionally, Justice White, who authored the plurality opinion in *Watson,* filed a concurring opinion in *Santana,* supra at 43–44, 96 S.Ct. 2406, in which he expressed the view that since the police had probable cause to arrest and to believe that Santana was in her residence, they could enter the premises to effect a warrantless arrest provided force was not necessary to accomplish their entry. "This has been the longstanding statutory or judicial rule in the majority of jurisdictions in the United States, see ALI, A Model Code of Pre-arraignment Procedure 306–314, 696–697 (1975), and has been deemed consistent with state constitutions, as well as the Fourth Amendment. It is also the Institute's recommended rule. *Id.* § 120.6." *United States v. Santana,* supra at 44, 96 S.Ct. at 2410 (White, J., concurring). The ALI rule which Justice White refers to would appear to provide adequate accommodation for the tension that necessarily exists between the individual's right to privacy and the Commonwealth's interest in promoting effective law enforcement procedures. Section 120.6 of the Model Code, supra, at 19–20, specifically addresses the issue at bar and states:

"Section 120.6 Place of Arrest: Private Premises

(1) *Demand to Enter and Entry onto Private Premises to Make an Arrest.* If a law enforcement officer has reasonable cause to believe that a person whom he is authorized to arrest is present on any private premises, he may, upon identifying himself as such an officer, demand that he be admitted to such premises for the purpose of making the arrest. If such demand is not promptly complied with, the

officer may thereupon enter such premises to make the arrest, using such force as is reasonably necessary, subject to the provisions of Section 120.7 regarding the use of deadly force.

(2) *Entry Without Prior Demand.* The demand to be admitted required by Subsection (1), need not be made, if the officer has reasonable cause to believe that a person whom he is authorized to arrest for a felony or misdemeanor is present on such premises, and that if such demand were made,

(a) the person to be arrested would escape; or

(b) the officer would be subject to harm in effecting the arrest; or

(c) any person would be harmed, or evidence destroyed, or property damaged or lost.

(3) *Special Restrictions on Arrests at Night.* No law enforcement officer shall seek to enter any private premises in order to make an arrest between 10 p. m. and 7 a. m. unless

(a) he is acting under a warrant of arrest and the warrant authorizes its execution during such hours, or

(b) he has reasonable cause to believe that such action is necessary to prevent

(i) the escape of a person to be arrested for a crime involving serious bodily harm or the threat or danger thereof, or

(ii) harm to any person, destruction of evidence, or damage to or loss of property."

Section 120.6 modifies the traditional common law rule only to the extent of imposing special limitations on nocturnal arrests in the home. In our view, these limitations on nighttime arrests coupled with the requirement that the police, absent exigent circumstances, first announce their identity, purpose, and demand admittance provides a commendable balance between society's interest in protecting itself and the citizen's right to freedom from unreasonable governmental intrusions. "To go further and require a warrant or a showing of necessity before the police may

make a felony arrest on private property even in daytime seems unduly restrictive. Moreover, apart from the specially alarming quality of nighttime entries and apart from search considerations, it is far from clear that an arrest in one's home is so much more threatening or humiliating than a street arrest to justify further restrictions on the police." ALI, A Model Code of Pre-arraignment Procedure, § 120.6, supra, Commentary at 307 (1975).

■■ Indeed, were we free to do so this Court would judicially adopt Section 120.6 of the Model Code and apply it to the instant case. That choice, however, is no longer ours.[9] While the instant appeal was pending the Supreme Court of Pennsylvania handed down its decision in *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177 (1978). In *Williams* the court, drawing upon several decisions[10] in the Federal courts, concluded that "an arrest warrant is required to validly arrest someone in his home unless exigent circumstances exist to justify the warrantless intrusion." 483 Pa. at 297, 396 A.2d at 1179. In reaching this conclusion the Court, quoting from *Dorman v. United States,* supra, 140 U.S.App.D.C. at 320–21, 435 F.2d at 392–93, held that the decision whether there were exigent circumstances involved consideration of the following factors:

> "First, that a grave offense is involved, particularly one that is a crime of violence. See, e. g., *Warden v. Hayden* [387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967)]; *McDonald v. United States,* 335 U.S. 451, 459, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (concurring opinion of Justice Jackson).

**9.** Parenthetically, we observe that on December 13, 1978, the Supreme Court of the United States noted probable jurisdiction in the cases of *People v. Payton* and *People v. New York,* ——— U.S. ———, 99 S.Ct. 718, 58 L.Ed.2d ———. In *Payton and Riddick,* 45 N.Y.2d 300, 408 N.Y.S.2d 395, 380 N.E.2d 224 (1978), the Court of Appeals of New York held that probable cause alone was sufficient to validate a warrantless arrest on private premises. The Federal courts in New York, however, have reached a contrary result. See *United States v. Reed,* 572 F.2d 412 (2d Cir. 1978).

**10.** See *United States v. Reed,* 572 F.2d 412 (2d Cir. 1978); *United States v. Shye,* 492 F.2d 886 (6th Cir. 1974); *Dorman v. United States,* 140 U.S.App.D.C. 313, 435 F.2d 385 (1970); *Vance v. North Carolina,* 432 F.2d 984 (4th Cir. 1970).

Contrariwise the restrictive requirement for a warrant is more likely to be retained, and the need for proceeding without a warrant found lacking, when the offense is what has been sometimes referred to. as one of the 'complacent' crimes, like gambling.

"Second, and obviously inter-related, that the suspect is reasonably believed to be armed. Delay in arrest of an armed felon may well increase danger to the community meanwhile, or to the officers at time of arrest. This consideration bears materially on the justification for a warrantless entry.

"Third, that there exists not merely the minimum of probable cause, that is requisite even when a warrant has been issued, but beyond that a clear showing of probable cause, including 'reasonably trustworthy information,' to believe that the suspect committed the crime involved.

"Fourth, strong reason to believe that the suspect is in the premises being entered.

"Fifth, a likelihood that the suspect will escape if not swiftly apprehended.

"Sixth, the circumstances that the entry, though not consented, is made peaceably. Forcible entry may in some instances be justified. But the fact that the entry was not forcible aids in showing reasonableness of police attitude and conduct. The police, by identifying their mission, give the person an opportunity to surrender himself without a struggle and thus to avoid the invasion of privacy involved in entry into the home.

"Another factor to be taken into account, though it works in more than one direction, relates to time of entry—whether it is made at night. On the one hand, as we shall later develop, the late hour may underscore the delay (and perhaps impracticability of) obtaining a warrant, and hence serve to justify proceeding without one. On the other hand, the fact that an entry is made at night raises particular concern over its reasonableness, as indicated in Justice Harlan's opinion in *Jones v. United States* [357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958)], and may

elevate the degree of probable cause required, both as implicating the suspect, and as showing that he is in the place entered. (Footnotes omitted.)"

*Commonwealth v. Williams,* supra, 483 Pa. at 297, 396 A.2d at 1179. In applying these criteria to the case at bar we find that exigent circumstances were present and, therefore, the police did not act unlawfully in entering appellant's apartment without a warrant.

First, it cannot be gainsaid that appellant was charged with a particularly serious offense. Second, the offense was committed at gunpoint only two hours prior to the attempted arrest and thus the police had good reason to believe the suspect was still armed. Cf., *Commonwealth v. Williams,* supra. Third, given the victim's prompt report and description of the incident to the police, there was unquestionably probable cause to believe that appellant was the felon. Fourth, in view of the loud music emanating from appellant's apartment and the fact that the offense had allegedly occurred in the same apartment two hours earlier, there was "strong reason to believe that the suspect is in the premises being entered." *Dorman v. United States,* supra, 140 U.S. App.D.C. at 320, 435 F.2d at 392. Fifth, there existed "a likelihood that the suspect [would] escape if not swiftly apprehended." *Id.* In *Dorman,* which involved a nighttime warrantless arrest four hours after the offense, the court stated, "[t]here was at least a possibility [as opposed to a likelihood] that delay might permit escape . . ." *Id.* 140 U.S.App.D.C. at 321, 435 F.2d at 393. The court further observed: "The police were still dealing with a relatively recent crime, and prompt arrest might locate and recover the instrumentalities and fruits of the crime before otherwise disposed of." *Id.* We are of the opinion that these same considerations are equally germane to the case at bar as contrasted to the situation in *Commonwealth v. Williams,* supra, where the warrantless arrest was effected almost three years after the date of the crime. Sixth, we find that the police were justified in forcibly entering appellant's apartment after having identified themselves and not re-

ceived any response to their demand for admission. Although the record discloses that the officers failed to expressly announce their purpose prior to entry, we believe this omission was justifiable given the absence of any response to their repeated knocks and declarations of identity. See *People v. Marshall*, 69 Cal.2d 51, 69 Cal.Rptr. 585, 442 P.2d 665 (1968). Lastly, the intrusion took place in mid-afternoon.

Thus we conclude that exigent circumstances, as defined in *Dorman v. United States*, supra, and applied in *Commonwealth v. Williams*, supra, were present in the case at bar and it was therefore proper for the police to attempt to arrest appellant in his apartment without a warrant. Accordingly, the starter's pistol which was in plain view on appellant's bed was subject to seizure and properly admitted into evidence.

Judgments of sentence affirmed.

SPAETH, J., files a dissenting opinion.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I believe we should reverse and remand for a new trial.

–1–

In *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), the Supreme Court cited and adopted the reasoning of decisions by the Courts of Appeal of the District of Columbia, Second, Fourth, and Sixth Circuits, which

> held that because of the Fourth Amendment and the substantial expectation of privacy in one's home, an arrest warrant is required to validly arrest someone in his home unless exigent circumstances exist to justify the warrantless intrusion. 483 Pa. at 297, 396 A.2d at 1179.

The first question we must decide, therefore, is whether in the present case "exigent circumstances" were shown to exist.[1]

I agree with the majority that in answering this question we should consider—as the Supreme Court in *Williams* considered—the six factors enumerated in *Dorman v. United States*, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970). *See also United States v. Reed*, 572 F.2d 412 (2d Cir. 1978). My disagreement with the majority is that when I consider those factors, I conclude that exigent circumstances were not shown to exist.

The six factors may be summarized as follows: (1) whether a grave offense is involved; (2) whether the suspect is reasonably believed to be armed; (3) whether there is clear, or strong, and not merely minimum, or just sufficient, probable cause to believe that the suspect committed the offense; (4) whether there is strong reason to believe that the suspect is in the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; and (6) the circumstances of the entry. In considering these factors the important point to bear in mind is that it is not enough simply to count to see how many of them exist, and then to say, for example, that if four exist, exigent circumstances may be found, but if only two exist, exigent circumstances may not be found. Instead, it must be borne in mind that the fifth factor—the likelihood of escape—dominates the others, or to say the same thing in different words, that the appropriate weight to be assigned to the various factors will vary according to the weight assigned the fifth factor.

1. The majority's discussion goes beyond deciding this question, in two respects. First, the majority interprets *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), as holding that a warrantless arrest may be made in one's home on only probable cause; and second, the majority says that the rule recommended by the American Law Institute Model Code of Pre-arraignment Procedure should be adopted, and that under that rule, the arrest here was proper. Given the decision in *Commonwealth v. Williams, supra*, this discussion can only be regarded as *dictum*.

This may be seen by supposing two cases: one in which the fifth factor is entitled to great weight, and one in which it is entitled to very little weight. Suppose a *very strong* likelihood that the suspect will escape if not swiftly apprehended. Then, exigent circumstances may exist even though only a few of the other factors exist, or even if none of them exists. For example, if the suspect is wanted for gambling, and is not armed, still, if he is a big gambler—a kingpin of organized crime—and is obviously about to escape to another country, a warrantless arrest in his home may be justified. Now suppose a *very weak* likelihood that the suspect will escape if not swiftly apprehended. Then, it is most unlikely that exigent circumstances will exist. To be sure, a case may be imagined where they will exist—for example, the case of a sniper who has barricaded himself in a tower.[2] Such a case, however, will be unusual. Usually, whether exigent circumstances exist may be determined simply by asking, "Is there anything to suggest that the suspect intends immediate escape?" If the answer is, "No," then the response should be, "Very well, get a warrant, if you intend to enter his home." This is how the Supreme Court proceeded in *Commonwealth v. Williams, supra,* as it considered how to balance the several factors I have described. The Court noted that five factors weighed in favor of a warrantless arrest, but then (not in my words but in effect) asked itself whether there was anything to suggest that the suspect intended immediate escape. Since there was no evidence that the suspect was armed, and since, "[e]ven more importantly, the instant homicide pre-dated the date of arrest by approximately three years," 483 Pa. at 300, 396 A.2d at 1180, nothing did suggest immediate escape. Accordingly, the Court found that *"[t]here was little need of swift apprehension,"* id., with the conclusion resulting that exigent circumstances did not exist, and that the police should therefore have obtained an arrest warrant, *id.*

**2.** "When law enforcement officers have probable cause to believe that an offense is taking place in their presence and that the suspect is at that moment in possession of the evidence, exigent circumstances exist." *United States v. Watson,* 423 U.S. 411, 435, 96 S.Ct. 820, 833, 46 L.Ed.2d 598 (1976) (MARSHALL, J., dissenting.)

Of course, this analysis will not be undertaken unless one attaches a special sanctity to the home, which the majority, I submit, does not do, as may be seen from its extended *dictum*.[3] In my opinion, we should resolutely adhere to the tradition, so deeply embedded in our law, that the home is a special place, not to be invaded by the police except in the most stringently limited circumstances. *Coolidge v. New Hampshire*, 403 U.S. 443, 474, 484, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Reed, supra; Commonwealth v. Williams, supra. And see United States v. Watson*, 423 U.S. 411, 444–453, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (MARSHALL, J., dissenting).

If one applies these principles in considering the present case, one will readily conclude that the warrantless entry into appellant's apartment was improper, and that accordingly, the evidence the police saw there, and seized, should have been suppressed. Nothing suggested that appellant intended immediate escape. To the contrary, the police had been told by the complainant that appellant was employed as superintendent of the apartment building in which his apartment was located. The plain indication was that if the police obtained a warrant, they would have no difficulty in finding and arresting appellant. The information supplied by the complainant was ample basis for the issuance of a warrant, and as it was during the day, to obtain a warrant would not have required much time.[4]

3. *See* footnote 1, *supra*.

4. I recognize that the majority *says* that "there existed 'a likelihood that the suspect [would] escape if not swiftly apprehended.'" Majority slip opinion at 712. The majority, however, fails to offer any support for this statement, which suggests that the majority believes that the fact that a grave offense has been committed *by itself* can support a finding that there is a likelihood of escape. If this is the majority's belief, it confuses "likelihood" with "possibility." No doubt every felon knows he may be arrested. It is therefore *possible* that he will try to escape. It does not follow that it is *likely* that he will try to escape—and indeed, we know that many felons make no effort to escape, but return to their homes, and remain in their neighborhoods, until the police arrest them.

–2–

Since I have concluded that the starter pistol should have been suppressed, I must consider whether its admission in evidence requires a new trial. In this regard, the lower court also concluded that the starter pistol should have been suppressed; it went on to conclude, however, that its admission in evidence was harmless error.

At the trial the complainant testified as follows. On April 1, 1976, on her way up the stairs in her apartment building she saw appellant, the building superintendent. She told him she was having a problem with her bathroom sink, and asked him to come to her apartment to fix it. Appellant did, but after looking at the sink, made advances toward her. When she rejected these, appellant produced a gun and forced her to accompany him to his apartment in the basement. There, he forced her at gun point to perform sodomy, and then allowed her to leave. She went back to her apartment, cleaned up, went outside and reported the incident to the police. The next day appellant came to her door and threatened her.

The complainant's testimony was impeached by the use of her prior inconsistent statements to the police. On the day of the incident, she gave a statement to Detective Frank Margerum in which she said: that when she entered the apartment building she saw appellant, whom she assumed to be the janitor; that she asked him if he could obtain a new name plate for her mail box, as someone had ripped hers off her box; that he said she should come down to his apartment and he would get her a new name plate; that she did, and there appellant grabbed her, held a gun on her, and forced her to commit sodomy. There were various other inconsistencies between the complainant's testimony and her statement to Detective Margerum, and also between her testimony and a statement she gave the police on April 10, 1976, including whether the incident occurred on April 1 or April 5, 1976.

Appellant argues that the complainant's testimony was so impaired by her prior inconsistent statements that the trial

judge as a matter of law should have disbelieved her. So far as we are concerned, however, the question is not whether the trial judge should have disbelieved the complainant, but whether, the judge having believed her, we should say he was wrong. In answering this question, we must bear in mind that the trier of fact is the sole judge of the credibility of a witness; the trier's finding will therefore not be disturbed unless it is based on evidence so unreliable or contradictory that we can say it is the result not of reason but conjecture. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Smith*, 457 Pa. 638, 326 A.2d 60 (1974). Here the trial judge found that "the essential point [is] that the complainant credibily [*sic*] testified in court as to the offense, whatever the date and any difference as to date was not here shown to be material." Lower court's opinion at 4. I acknowledge that given the complainant's two considerably different versions of how the incident began, the judge's restriction of the inconsistency problem to merely one of dates is somewhat troubling. Nevertheless, it is clear that as to the essential elements of the offenses charged—the use of force or threats, and the sexual assaults themselves—the judge found the complainant credible. I cannot say that her prior inconsistent statements were so closely related to these essential elements as to reduce the judge's finding to a matter of conjecture. However, the prior inconsistent statements do show that the admission in evidence of the starter pistol was not harmless error. The complainant's credibility was crucial to the case, and the pistol corroborated her. The assistant district attorney recognized this, for in his summary to the trial judge he argued:

> If she [the complainant] would make up a story, as the Defense attorney alleges, the question we are left with is, how would she ever learn about the gun unless the gun was actually used on her?

N.T. at 102.

Thus the Commonwealth regarded the pistol as evidence that was essential to bolster the complainant's credibility,

556

impeached as she had been by her prior inconsistent statements. Error, to be harmless, must be harmless beyond a reasonable doubt. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). That cannot be said here.[5]

The judgment of sentence should be reversed, and a new trial ordered.

---

5. This conclusion makes it unnecessary to decide whether the chain of custody to the pistol was insufficient, and whether the trial judge erred in allowing the Commonwealth to amend the information at the time of trial to read that the offense occurred on April 1, rather than April 5, 1976.