459 A.2d 815

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**James HARTFORD.**

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Edward DEMMER.**

Superior Court of Pennsylvania.

Submitted May 19, 1982.

Filed April 22, 1983.

Johnson, J., filed dissenting opinion.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellant.

Leonard I. Sharon, Pittsburgh, for Hartford, appellee, at No. 658.

Thomas W. Brown, Pittsburgh, for Demmer, appellee, at No. 660.

Before HESTER, McEWEN and JOHNSON, JJ.

HESTER, Judge:

This is an appeal by the Commonwealth from the granting of a motion to suppress.

The facts of the case are as follows:

On August 3, 1979, Detective Anthony Ransley of the Allegheny County Police, Narcotics Division, purchased several grams of cocaine from appellee James Hartford, at the appellee's apartment located at 207 Castle Shannon Boulevard in Mount Lebanon, Pennsylvania. Despite diligent effort, Detective Ransley could not thereafter locate appellee Hartford for approximately five months. Appellee had moved from his Mt. Lebanon address and his telephone had been disconnected. Finally, on January 10, 1980, Ransley received a telephone call from an informant advising that Hartford might be at a certain address in Castle Shannon on Waverly Street. This call came to detective Ransley at approximately 6:00 p.m.

Ransley then proceeded to that address. It was a multiple-dwelling apartment building. He and Detective Duffy, who accompanied him, went to the garage portion of the building to see whether they could locate Hartford's car. Upon spotting what appeared to be Hartford's vehicle, they

ran a check on the license number which confirmed their suspicion.

Upon receiving this information, the detectives went to the Castle Shannon Police Department and inquired whether the police knew the manager of the building. Also, the detectives wanted the Castle Shannon Police to assist them with the arrest of appellee Hartford.

The detectives and police then proceeded back to the apartments, located appellees' names on the mailbox, and had the manager indicate which apartment was the appellees.

The detectives and police went to appellees apartment where, before the officers, had an opportunity to knock on appellees door, appellee Demmer opened the door. The officers then identified themselves and asked if they could enter. Appellee Demmer said "Come on in." They entered, saw Hartford and another individual sitting on the living room floor. Detective Ransley proceeded to arrest Hartford [1] and to read him his *Miranda* rights. He then noticed cocaine and assorted paraphernalia on the table at which Hartford and his companion were sitting. He accordingly promptly arrested Hartford and Demmer, on new charges,[2] and one of the detectives again read their rights to both of them.

The detectives then inquired of Hartford and Demmer if they had any more drugs. Hartford and Demmer each gave to the detectives more cocaine which they had in other rooms. Hartford also told Ransley to proceed to search the apartment if he wished.

It is the drugs and drug paraphernalia thus seized by the officers that is the subject of the motion to suppress which was granted by the lower court. The Commonwealth in its

1. This first arrest was on charges related to the earlier sale of cocaine to Detective Ransley.

2. The charges for this second arrest were possession of a controlled substance, 35 P.S. § 780–113(a)(16) (a misdemeanor); possession with intent to deliver, 35 P.S. § 780–113(a)(30) (a felony); and criminal conspiracy, 18 Pa.C.S.A. § 903(a)(1) (a felony).

appeal argues that there were exigent circumstances which validate the entry into the apartment and the arrest of Hartford, without a warrant, which led to the arrests at issue in this case.

We agree.

■ It is a basic principle of Fourth Amendment law that a search or seizure carried out on a suspect's premises without a warrant is per se unreasonable unless the police can show that it falls within one of a carefully designed set of exceptions based on the presence of exigent circumstances. *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Recognizing this, the Pennsylvania Supreme Court, in *Commonwealth v. Williams,* 483 Pa. 293, 396 A.2d 1177 (1978), noted several relevant considerations to be balanced in determining whether a warrantless arrest is valid: 1) the gravity of the offense; 2) a reasonable belief that the suspect is armed; 3) a showing of probable cause; 4) a reasonable belief that the suspect is within the premises sought to be entered; 5) a reasonable belief that the suspect will escape; 6) the time of entry; and 7) whether the entry was peaceable.

The lower court agreed that at least four factors are present to uphold the warrantless intrusion. These are: 1) the police had strong probable cause to arrest Hartford; 2) the police had good reason from the facts as set forth above to believe he lived there; 3) the entry was peaceable as Demmer let them in, and 4) the intrusion at 7:00 p.m. is considered a daytime entry.

However, the lower court viewed the following factors as weighing against the warrantless intrusion and thus concluded that the arrest was illegal: The crime was not one of violence; Detective Ransley had no reason to believe Hartford was armed; there was little need for swift apprehension as the crime had occurred on August 3, 1979, some five months before the arrest; and there was no indication that Hartford would escape if not apprehended immediately.

Our Supreme Court in both *Williams* and *Commonwealth v. Wagner,* 486 Pa. 548, 557–58, 406 A.2d 1026, 1031 (1979), in analyzing the criteria for warrantless arrests grounded its' decisions on the swift apprehension factor, as illustrated from this passage from *Wagner:*

"The Commonwealth concedes that the theft involved herein was not a crime of violence and was not what is considered a grave offense. Trooper Lingenfelter had no reason whatsoever to believe appellant was armed and dangerous, even though in fact he was. *Even more importantly,* there was little need of swift apprehension. The theft had occurred some six months earlier and there was no indication that appellant would escape if not apprehended immediately." (Emphasis added).

In the present case, we disagree with the lower court, for we believe that swift apprehension was strongly called for under the facts asserted at the suppression hearing. First, Detective Ransley had been attempting to locate appellee Hartford for approximately five months since the detective had made an initial purchase of cocaine from him on August 3, 1979. Despite diligent effort, Detective Ransley had failed to locate him. Finally, on January 10, 1980, Ransley received a telephone call from an informant stating that Hartford might be at a certain address in Castle Shannon.

After ascertaining that appellee Hartford's automobile was parked at the Waverly Street premises, the detectives and police located appellees' names on the mailbox and the manager indicate which apartment was the appellees.

At this point in the suppression hearing, Detective Ransley testified as follows:

Q. "After you ascertained that it was Hartford and Demmer, it was their name on the mailbox and the manager indicated to you which apartment was theirs, did you then think to go to a magistrate and obtain an arrest warrant for Mr. Hartford?

A. Yes, I did, but there was no magistrate available at that time of day."

Based upon these set of facts, we disagree with the lower court's conclusion that swift apprehension was not needed.

First, appellee Hartford had evaded the police investigation for over five months. Second, the detectives, in order to ascertain whether their "tip" was accurate, had already made their presence known to the manager of the building; and being that uniformed Castle Shannon police officers were assisting in locating appellee, it is quite possible that if the officers had waited until the following day to secure an arrest warrant, Hartford would have learned that the police had been at the apartments, and thus again would have evaded custody. Also, it is to be noted that drug dealers are known to be transients, in that, they consummate a deal and then move on to a different location. In fact, this is exactly what happened in the present case. Appellee Hartford had consummated a deal with Detective Ransley and had then evaded both the detective and his informant by moving to different locations over a five month period. Moreover, our Supreme Court in *Williams* has stated:

"... the late hour may underscore the delay (and perhaps impracticability of) obtaining a warrant, and hence serve to justify proceeding without one." *Williams, supra* 483 Pa. at 299, 396 A.2d at 1180.

Thus, we hold that swift apprehension was an utmost necessity in this instance.

■ It must also be noted that appellee Demmer consented to the officers entering the apartment. Thus, the officers, once inside the apartment effectuating a lawful arrest of appellee Hartford, were rightfully in a position to view the contraband and devices on the coffee table near where appellee Hartford was arrested. The "plain view" doctrine is therefore applicable to the items on the coffee table. *Commonwealth v. Clelland*, 227 Pa.Super. 384, 323 A.2d 60 (1974).

Having been notified of their *Miranda* rights, appellees Hartford and Demmer nonetheless delivered cocaine to De-

tective Ransley on request. Therefore, this evidence was lawfully obtained.

The marijuana found during a subsequent search of Hartford's room was also lawfully obtained. With few exceptions, an intrusion into a place of privacy may not be effected absent a warrant issued based upon probable cause, and one of those exceptions is when a criminal suspect consents to the search. *Commonwealth v. Morrison*, 275 Pa.Super. 454, 418 A.2d 1378 (1980), *cert. denied* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). In the instant case, both appellees consented to a search of their apartment, having been notified that a search warrant had yet been obtained. Moreover, since the voluntariness of a suspect's consent is determined by whether the consent was procured through force or other coercion (*Morrison, supra*, 275 Pa.Super. at 459–60, 418 A.2d at 1380), an assertion that appellees' consent was not voluntary is without merit. None of the evidence, then, obtained incident to the warrantless yet lawful arrest of James Hartford and Edward Demmer should have been suppressed.

Order reversed and remanded for proceedings not inconsistent with this Opinion.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

In my view the trial court correctly granted the motion to suppress on the grounds that the entry into the apartment for the purpose of arresting Hartford for the sale of cocaine five months previously was illegal, and therefore the evidence seized at that time to support the charges for the second arrest of Hartford and Demmer should be suppressed as directly resulting from that illegal arrest. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). I therefore dissent.

In *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), *cert. denied*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), our supreme court held that a warrant-

less arrest in the home is illegal except in certain specific circumstances.

The circumstances which may justify a warrantless arrest in the home are: (1) that a grave offense is involved, particularly a crime of violence, (2) that the suspect is reasonably believed to be armed, (3) that there is a clear showing of probable cause to arrest, (4) that there is reason to believe that the suspect is on the premises, (5) there is a likelihood that the suspect will escape, (6) there was a peaceable though non-consensual entry, and (7) whether or not the entry was made at night. *Commonwealth v. Williams*, 483 Pa. at 297–300, 396 A.2d at 1179–80.

The trial court and the majority of this panel of the superior court concluded, and I agree, that factors (3), (4), (6) and (7) would permit a warrantless entry in this case. But the trial court also concluded, as do I, that application of the other factors shifts the balance against a finding of legality for this warrantless arrest in the home, thus warranting suppression of the evidence seized as a result of the illegal entry.

The initial arrest of Hartford was for the sale, five months earlier, in Hartford's apartment, of two grams of cocaine. At the suppression hearing on the charges involved in the second arrest Detective Ransley testified that he did not arrest Hartford at the time of the sale because he wanted to further the investigation by making other purchases from Hartford. N.T. June 30, 1980 at 4. About a month after the sale Detective Ransley was told by his informant that Hartford had moved. Then five months after the sale Ransley was told by the informant that Hartford was at the address in question in this appeal.

It appears that the only attempt Ransley made to contact Hartford during the five months was an unsuccessful telephone call as a result of which Ransley discovered that Hartford's telephone was disconnected. The detective did not appear to have inquired from the telephone company whether or not there was a new listing for Hartford.

After being told by the informant of Hartford's new whereabouts, the detectives did not attempt to obtain an arrest warrant before proceeding to the address, ostensibly because no magistrate was available at that hour (6–7 p.m.). They went to the address, and learned that Hartford was living there, apparently quite openly (his car was in the garage and his name on the mailbox). They still did not attempt to obtain an arrest warrant, but, having been pointed in the right direction by the manager, proceeded directly to Hartford's apartment door. Then, when the door opened and the detectives asked if they could enter, they went inside the apartment for the purpose of arresting Hartford for the first sale of cocaine. In the process of arresting Hartford they saw the drugs and drug paraphernalia. This prompted them to arrest Hartford and Demmer on new charges. It is these charges and the evidence connected with them which are the subject of this appeal.

The Commonwealth argues, and the majority agrees, that exigent circumstances existed in that the suspect might again flee.

I disagree.

I believe that the testimony at the suppression hearing indicates that the detective was not diligent in searching Hartford's whereabouts. I also conclude that Hartford had simply moved rather than fled. And I strongly disagree that there were any exigent circumstances justifying the arrest without a warrant. On direct examination, when asked the purpose for going to the Waverly Street address, detective Ransley stated, "To see if Mr. Hartford was there. We were going to arrest him." N.T. at 8. Once the detectives had seen Hartford's vehicle in the garage, or his name on the mailbox, they should have taken no further action without first obtaining an arrest warrant. By entering the building and approaching Hartford's door, the officers created their own arguably exigent circumstances. This is hardly the type of exigent circumstances which the courts envisage when they uphold warrantless arrests in the home.

In *United States v. Minick*, 455 A.2d 874 (D.C.App.1983), the court decided that exigent circumstances excused a warrantless entry of a rape and murder suspect's home within a few hours of the crime and shortly after police had obtained clear probable cause to arrest the suspect, because any further delay might lead to destruction of critical evidence on the suspect's clothes and person. In *Commonwealth v. Wagner*, 486 Pa. 548, 406 A.2d 1026 (1979), application of the *Williams* factors (3), (4) and (7) weighed in favor of upholding the warrantless arrest of a theft suspect, but the fact that the crime was not one of violence and was committed six months previously led to the conclusion that swift apprehension was unnecessary. Furthermore, the suspect was not thought to be armed and the entry into the home was forcible. Our supreme court concluded that the arrest was illegal, and reversed the judgment of sentence. In *Commonwealth v. Eliff*, 300 Pa.Super. 423, 446 A.2d 927 (1982), the crime, as here, was unlawful delivery of controlled substances, thus, though a felony, it was not a crime of violence. Also, it had been committed four months earlier. There was no indication that the suspect would escape if not captured immediately, and no indication that he was armed. This court, applying the *Williams* factors to a "knock and announce" case, concluded that swift apprehension was not necessary and that exigent circumstances were not present. In *Commonwealth v. Pytak*, 278 Pa.Super. 476, 420 A.2d 640 (1980), application of the seven factors led to an upholding of the warrantless entry. The crime was kidnapping and robbery; the suspect was reasonably believed to be armed; there was clear probable cause to arrest him; there was information from a reliable informant that the suspect was planning to leave one hour and fifteen minutes later; the magistrate could not be found after diligent attempt was made to find him; there was a non-forcible daylight entry. *See also Commonwealth v. Fladger*, 263 Pa.Super. 538, 398 A.2d 707 (1979), where, in a dissenting opinion, Judge SPAETH concluded that exigent circumstances did not exist where nothing indicated that the suspect, the superintendent of

the apartment building where the crime (sodomy) took place against a tenant, was likely to escape.

Against the background of the above case law I cannot but conclude that the trial court was correct, and that its decision to suppress the evidence seized after the illegal entry into the apartment should be affirmed.